# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 132

OCTOBER TERM, A.D. 2013

*October 17, 2013*

JERRY D. WALKER,

**Appellant**
**(Defendant),**

**v.**

S-13-0063

JACI S. WALKER,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
    Richard "Zak" Szekely, Casper, Wyoming

*Representing Appellee:*
    No appearance

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]     Appellant Jerry D. Walker (Father) filed a motion seeking primary residential custody[1] of his daughter.  Appellee Jaci S. Walker (Mother), who was the primary residential custodian under the parties' divorce decree, opposed a change of custody and sought an increase in child support based on a claimed increase in Father's income.  The district court denied Father's motion for a change of custody, finding no material change in circumstances.  However, it found that Mother had proven that she was entitled to an increase in child support.  It also awarded her a judgment for Father's share of the child's medical and other expenses she had paid.

[¶2]     We find that the amount of child support awarded is not correct under Wyoming's statutory child support tables, and we therefore reverse and remand for entry of a proper award.  Father has provided us with no record indicating that the district judge erred in any other respect, and so we affirm on all other issues.

## ISSUES

[¶3]     1.     Did the district court err in finding that Mother was entitled to an increase in child support?

2.     Did the district court have authority to award a judgment in any amount?

3.     Did the district court err in failing to credit Father with payments he had made if it did have authority to award a judgment?

4.     Did the district court abuse its discretion in denying Father's motion for a change of custody because it did not consider the parties' minor child's best interests or preferences?

## FACTS

[¶4]     The parties had a contested divorce which went to trial.  By the terms of the decree entered on January 13, 2006, Mother received primary residential custody of the parties' only child, MLW, who was born in 1999.  The decree noted that Father had a history of drug use, but that he was making good efforts to recover from addiction, and the court therefore awarded visitation in accordance with the First Judicial District's Standard Visitation Order.[2]

---

[1] Wyoming statutes do not adopt the terms "primary residential custody" (custody) and "parenting time" (visitation).  The Court is aware that these terms are in common usage and views them in the same light as the statutory terms, custody and visitation.

[2] The Standard Visitation Order sets forth the visitation to which the non-custodial parent is entitled, including weekends, holidays, summer vacations, and special days in the child's and the parents' lives.

1

[¶5]     In the original decree, the district court found that Father earned $2,700.00 per month and that Mother earned $2,076.86 per month, and it therefore required Father to pay $527.85 in monthly child support, the presumptive amount due under the child support tables contained in Wyo. Stat. Ann. § 20-2-304.   Father was also ordered to reimburse Mother for $2,500.00 she had paid toward his child support obligation for a child not born of the marriage between these parties.

[¶6]     On January 21, 2010, Father filed a petition asking the district court to make him MLW's primary custodian, to grant Mother standard visitation (the same visitation rights he had up to that point), and to modify child support to reflect this change.  He claimed that he had turned his life around, remarried, had another child, had been involved in a church in a variety of ways, and had generally exercised visitation with MLW to the greatest extent possible given the fact that he lives in Casper and Mother lives in Cheyenne.  He also claimed that Mother kept cats to which MLW was allergic, that she did a poor job of taking care of the child, that the child was often left alone, that her grades were slipping, and that Mother had failed to properly "foster [MLW's] religion." He also claimed that Mother had interfered with his visitation, had failed to advise him of MLW's medical issues, and had otherwise failed to act in the child's best interest.  He contended that these facts were a material change in circumstances justifying reconsideration of the custody provisions of the decree, and that he should be the primary custodian because that would be in the child's best interest.

[¶7]     Mother denied the negative allegations Father made about her in his petition.  She also filed a motion to increase the child support she received, claiming that Father had had an increase in his earnings, and that he should be required to pay more support.

[¶8]     In April of 2011, Mother requested that the court interview MLW *in camera* to determine her preference as to which parent would be her primary custodian, to which Father agreed.  The interview was conducted on April 18, 2011, and the transcript of that interview is in the record.  MLW was eleven at the time, and the transcript indicates that she was articulate and composed, and quite intelligent. She indicated that she was comfortable with either parent, but preferred to live with Father.  She also indicated that she expressed this same preference to the judge[3] who presided over the original divorce action about five years earlier, when she would have been five or six.

[¶9]     Mother later filed a motion which acknowledged that the child had been interviewed *in camera* and that she had told the court that she preferred to live with Father, but indicated that she had changed her mind and now wanted to remain with her mother.   Mother therefore asked the district judge to interview MLW again.   Father objected to another interview, contending that MLW did not want to be interviewed by

---

[3] The judge who presided over the divorce trial retired before these post-divorce proceedings.

the court or a guardian ad litem. No written or oral ruling on that motion appears in the record. If there was a second interview, there is likewise no transcript of it in the record.

[¶10] Before the case went to hearing, Father paid $3,994.74 on obligations he owed under the original decree, and Mother filed a partial satisfaction of judgment reflecting that payment. It is not clear what obligation this payment satisfied, although the record reflects the original debt of $2,500.00 and claims by Mother for medical and other expenses for MLW's benefit.

[¶11] The record does not reflect the date on which the claims of the parties were heard on the merits. Father represents that the hearing took place on April 30 and May 1 of 2012, and that appears to be consistent with the dates on which the parties filed their pretrial statements.[4] Mother's pretrial statement indicated that she had remarried, that MLW was excelling in school and participating in sports, 4-H, and Sunday school, and that she had been playing the violin and was accepted into the Cheyenne Youth Symphony. She generally offered to present evidence that she had been an excellent mother. She claimed that Father owed her $8,454.38, but acknowledged that he had made a partial payment, leaving a balance of $4,526.33.

[¶12] In his pretrial statement, Father claimed to be able to present evidence that would establish that he had a stable home free of tensions he claimed to exist in Mother's, which he alleged included conflict between MLW and Mother's new spouse. He contended that MLW preferred to live with him. He listed MLW as a witness if Mother would not stipulate to admissibility of the *in camera* interview done about a year earlier.[5] Father's pretrial statement does not reflect what evidence, if any, he intended to present to challenge the alleged debt of $4,526.33.

[¶13] The record does not include a transcript of the hearing on the merits, and the Court therefore cannot determine what evidence was presented or whether MLW testified, except to the extent that information is reflected in the district court's ruling. The district court later set a hearing at which it indicated that it would render an oral decision on the pending issues on October 2, 2012. Unfortunately, the transcript of that hearing is not in the record. The district court clerk's index describes a "Transcript of Decision Proceedings Dated October 2, 2009 Filed 11/28/12." This is undoubtedly the transcript of the ruling, but it was not designated as part of the record on appeal under W.R.A.P. 3.05(b).

[¶14] The parties were unable to agree on a proposed order after the district court announced its decision, and Father timely objected to Mother's proposed order and the

---

[4] Mother did not appear in this appeal, and we therefore do not have the benefit of any briefing from her.
[5] Whether such a stipulation was necessary in light of the previous agreement of the parties is questionable.

ruling on which it was based. Father contended that the net income the Court found and announced at the October 2, 2012 hearing did not support the award of $665.70 in monthly child support reflected in the oral ruling or Mother's proposed order.

[¶15] On January 28, 2013, the district court entered an "Order Granting Abatements, Modifying Child Support and Judgment on Medical Arrears and Denying Modification of Custody."[6] The order bears the watermark of Mother's attorney on the second page, and we conclude that it was the order she proposed.

[¶16] The district court found that Father had failed to meet the burden of proving that there had been a material change in circumstances, and therefore denied his petition to modify the custody provisions of the decree. It also found that changes in the parties' income would result in a 20% or greater increase in support. It recited that Mother's net monthly income was $2,862.35 and that Father's was $2,262.99, concluding that presumed child support would be $655.79. This is obviously incorrect, as the net income figures in the order would reflect a substantial decrease in Father's net income and a substantial increase in Mother's. The order also indicated that the court did not intend to deviate from the presumptive amount under the statutory child support tables. The order awarded Mother a judgment of $4,538.00, although it did not specify the basis for the award.

[¶17] Father promptly moved to amend the order to change the child support calculation and to vacate the judgment. He contended that the net income figures the court found actually required a decrease in support, and that the judgment was unsupported by any findings of fact or conclusions of law and was therefore void. Mother filed a response which disagreed with Father's claims, with the following exception:

> The Plaintiff admits that the Court found that there was a 20% change in increase [sic] in child support. Plaintiff admits that in reviewing Wyoming Statute 20-2-204 that it does not support that decision.

[¶18] The record does not contain any indication that Father requested a hearing on the motion. Father filed a notice of appeal seven days after the motion was filed, and this appeal proceeded with no ruling on it.

## DISCUSSION

[¶19] We will address the issues raised by Father in a different order than they are stated in his brief.

---

[6] Father claimed an abatement in support for certain periods when MLW was in his care. *See* Wyo. Stat. Ann. § 20-2-305 (LexisNexis 2013).

4

**Custody Determination**

[¶20]     The party seeking to modify established child custody provisions of a divorce decree has the burden of showing that a material change in circumstances that affects the child's welfare occurred subsequent to the entry of the initial decree, that the change warrants modification of the decree, and that the modification will be in the best interests of the affected child. *Cobb* [*v. Cobb*,] 2 P.3d [578] at 579-80 [(Wyo. 2000)] (quoting *Sorensen v. May*, 944 P.2d 429, 432 (Wyo. 1997)).

*JRS v. GMS*, 2004 WY 60, ¶ 10, 90 P.3d 718, 723 (Wyo. 2004); *see also* Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 2013) (allowing modification if there is a material change in circumstances and modification would be in the best interests of the child).

[¶21] A district court's determination as to whether there has been a material change in circumstances is "principally a factual determination to which we accord great deference. Our task is simply to determine whether, examining the record in the light most favorable to the successful party, the district court could have reasonably concluded as it did." *Hanson v. Belveal*, 2012 WY 98, ¶¶ 13, 34, 280 P.3d 1186, 1192, 1197 (Wyo. 2012) (quoting *Morris v. Morris*, 2007 WY 174, ¶ 7, 170 P.3d 86, 89 (Wyo. 2007)) (internal quotation marks omitted).

[¶22] If a petitioner is able to make the threshold showing of a material change in circumstances, the district court acquires jurisdiction to determine whether a change of custody would be in the best interest of the child. As we have stated:

> This Court has consistently recognized the broad discretion enjoyed by a district court in child custody matters. We will not interfere with the district court's custody determination absent procedural error or a clear abuse of discretion. In determining whether an abuse of discretion has occurred, our primary consideration is the reasonableness of the district court's decision in light of the evidence presented. We view the evidence in the light most favorable to the district court's determination, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.

*Durfee v. Durfee,* 2009 WY 7, ¶ 6, 199 P.3d 1087, 1089 (Wyo. 2009) (citations omitted).

[¶23] We have held that a trial judge may take the preferences of a child whose custody is disputed into consideration, and that the weight to be given to the child's preference will depend on age, reason for the preference, the relative fitness of the parents, the hostility, if any, of the child to the non-preferred parent, the preference of other siblings, and whether the child's preference has been tainted or influenced by one parent against the other. *JRS*, ¶ 11, 90 P.3d at 723 (citation omitted).

[¶24] In *Holiday v. Holiday*, 2011 WY 12, 247 P.3d 29 (Wyo. 2011), the parents could not agree on whether or how the district judge should interview a child who would have been ten or eleven when the case was tried. The district court therefore declined to interview the child. We held that the court should have fashioned an interview procedure which would have protected the parents' due process rights while not subjecting the child to unnecessary trauma. We found the court's failure to do so to be an abuse of discretion. *Id*. at ¶¶ 14-15, 247 P.3d at 33.

[¶25] Father argues that the district court did not consider the child's preference. The written order entered does not in fact address the best interests of the child at all, because the district court found that Father failed to prove the threshold requirement for a modification of custody, a material change in circumstances.

[¶26] We recently commented on appellants' obligation to provide an adequate record to allow us to review district court decisions for an abuse of discretion.

> We have long held that appellants must provide this Court with a record sufficient to allow adequate appellate review. When no transcript or any other proper substitute record of the facts of a case is included in the record on appeal, we presume that there were no irregularities in the district court's judgment, and that it was reasonably based on competent and sufficient evidence. *Golden v. Guion,* 2013 WY 45, ¶¶ 4–5, 299 P.3d 95, 96–97 (Wyo. 2013); *Chancler v. Meredith,* 2004 WY 27, ¶ 5, 86 P.3d 841, 842 (Wyo. 2004); *Stadtfeld v. Stadtfeld,* 920 P.2d 662, 664 (Wyo. 1996).

*Roberts v. Locke*, 2013 WY 73, ¶ 27, 304 P.3d 116, 122 (Wyo. 2013).

[¶27] As we have already said, the record before us does not contain a transcript of the two-day hearing on the petition to modify and other issues.[7] Father likewise did not include the transcript of the trial judge's oral ruling in the record. A party seeking review

[7] The record does not tell us whether the hearing was reported but not transcribed, or whether it was simply not reported because neither party requested it to be. *See* Uniform Rule of District Courts 904 (requiring a request that the official court reporter report proceedings in civil cases at least three working days before the hearing).

of a district court's decision must designate an adequate record for appellate review. *Beckwith v. Weber*, 2012 WY 62, ¶ 45, 277 P.3d 713, 723 (Wyo. 2012); *Nish v. Schaefer*, 2006 WY 85, ¶ 21, 138 P.3d 1134, 1142 (Wyo. 2006).

[¶28]  Due to the absence of a record of both the evidentiary hearing and district court's ruling, we have no idea what evidence was presented, or what findings the court made in its oral ruling.  The one transcript we have, that of the interview of the child, reflects a sensitive and thorough conversation during which the district judge appears to have established an excellent rapport with MLW.

[¶29]  It is difficult to believe that the district judge would put that much effort into an interview that he would not consider in his final determination.  We have no way of evaluating what evidence the district judge had to weigh against the somewhat equivocal preference the child expressed a year before the evidentiary hearing.  MLW informed the judge that she had expressed the same preference to live with her father to his predecessor five years earlier, meaning that her current inclination was not a change.[8] The interview revealed that the child was doing exceptionally well in school and in extracurricular activities, and that she had friends and family in Cheyenne, where her mother lives.  The child also indicated that her father travelled extensively in his employment.

[¶30]  Of course, if custody were changed, MLW would have to move to another city, enter a different school system, and pursue her extracurricular activities in a new environment.  The interview indicates that MLW enjoyed visitation with her father and his new family.  Nonetheless, we can understand how the district judge could find any change in circumstances not to be material enough to justify review of the original custody decision given MLW's success at Mother's home.

[¶31]  Under the circumstances and on the very limited record before us, we conclude that the district court could reasonably have concluded as it did, and affirm its determination that there was no material change in circumstances which would have conferred jurisdiction to consider a change of custody.

**Judgment against Father**

[¶32]  As already noted, the district court granted Mother a judgment for $4,538.00 as part of its order.  In her pretrial statement, Mother claimed to be entitled to $4,526.33[9] to reimburse her for credit card bills, uncovered medical bills, and interest on amounts due under the original divorce decree.  She admitted that Father had made a partial payment

---

[8] That preference was perhaps entitled to more weight, because MLW was five or six years older, although that factor would have had to be weighed against the other factors in *JRS, supra.*

[9] The minor difference between the two figures strongly suggests that there was a very small discrepancy between the claim originally made and the amount the district court found to have been proven.

on his obligations, but claimed that this payment left a balance. She described this alleged debt in a section of the statement entitled "Contempt Issues."

[¶33] The docket sheet for this case indicates that Mother filed a motion asking the district court to hold Father in contempt on February 11, 2010, the same day she responded to Father's petition and moved to modify support. Father did not designate this motion as part of the record. A motion seeking to hold the other party in contempt is a common means of enforcing the payment obligations of a divorce decree. *See, e.g., Greene v. Finn*, 2007 WY 47, ¶ 3, 153 P.3d 945, 946 (Wyo. 2007); *Graham v. Fenno*, 734 P.2d 983, 985 (Wyo. 1987).

[¶34] Father argues that he was denied due process, that the district court lacked authority to make an award of this kind, that the district court was obligated to make findings of fact to support the award, and that the district court failed to take his prior payments into consideration. We must identify the standard of review for each of those contentions.

[¶35] "The party claiming an infringement of his right to due process has the burden of demonstrating both that he has a protected interest and that such interest has been affected in an impermissible way. The question is whether there has been a denial of fundamental fairness." *In re KMO*, 2012 WY 99, ¶ 28, 280 P.3d 1203, 1213 (Wyo. 2012) (quoting *DH v. Wyo. Dep't of Family Servs.*, 2003 WY 155, ¶ 38, 79 P.3d 997, 1008 (Wyo. 2003)). We review de novo.

[¶36] The authority of the district court to award a judgment for amounts owed under a decree of divorce raises a question of law, as does the issue of whether the trial court was obligated to make findings of fact. We review questions of law de novo. *KM Upstream, LLC v. Elkhorn Const., Inc.*, 2012 WY 79, ¶ 44, 278 P.3d 711, 727 (Wyo. 2012); *Stewart Title Guar. Co. v. Tilden*, 2008 WY 46, ¶ 21, 181 P.3d 94, 102 (Wyo. 2008).

[¶37] Whether or not the district properly credited Father for payments made against his obligations under the divorce decree is a question of fact. A district court's findings of fact will not be reversed unless they are clearly erroneous. *Redland v. Redland*, 2012 WY 148, ¶ 154, 288 P.3d 1173, 1208 (Wyo. 2012).

[¶38] The absence of a record of the proceedings makes it impossible for this Court to address Father's claim that he was denied due process. We know only that he was aware of Mother's claims for reimbursement, and that this was an issue preserved by her pretrial statement and probably the motion to hold Father in contempt, which he did not include in the record before this Court. We also have reason to believe that the district court had a two-day hearing because the Father informed us that it did in his brief. Father was obligated to prove a violation of his right to due process, and he needed to provide the record demonstrating that deprivation. He did not do so.

[¶39]  To the extent Father argues that the district court could not award a judgment for amounts owed under a divorce decree in a contempt proceeding, we disagree.  District courts have both inherent and statutory authority to enforce their orders in domestic and other cases through contempt sanctions.  *Stephens v. Lavitt*, 2010 WY 129, ¶¶ 18-19, 239 P.3d 634, 639 (Wyo. 2010); § 20-2-204(b).  A court may award a judgment for money damages as a compensatory contempt sanction, rather than utilizing the more coercive alternative of ordering a defendant to pay and then perhaps incarcerating him or imposing other sanctions if he is able to comply and fails to do so. As the Eleventh Circuit Court of Appeals observed:

> Although we have found no case squarely on point, the Supreme Court and at least one court of appeals have acknowledged that a court can issue a money judgment as a remedy for civil contempt. *See De Beers Consol. Mines, Ltd. v. United States,* 325 U.S. 212, 220, 65 S. Ct. 1130, 89 L. Ed. 1566 (1945) (containing dicta regarding "process which conceivably may be issued for satisfaction of *a money judgment for contempt*" (emphasis added)); *In re Prof'l Air Traffic Controllers Org.,* 699 F.2d 539, 542 (D.C.Cir. 1983) (describing how one party "registered its three *civil contempt money judgments*" (emphasis added)). Moreover, the district court's decision to grant a money judgment would have accorded with the general equitable principle (albeit one rarely invoked) that "where the aggrieved party shows entitlement to equitable relief, but a grant appears to be impossible or impracticable, the court may nevertheless proceed with the case . . . , awarding damages *or* a money judgment in lieu of the requested equitable remedy." *Millsap v. McDonnell Douglas Corp.,* 368 F.3d 1246, 1265 (10th Cir. 2004) (emphasis added) (internal quotation mark omitted).

*F.T.C. v. Leshin*, 719 F.3d 1227, 1231-32 (11th Cir. 2013).  This decision is consistent with our ruling in *Walters v. Walters*, 2011 WY 41, ¶¶ 24-25, 249 P.3d 214, 229-30 (Wyo. 2011), in which we acknowledged the availability of compensatory civil contempt sanctions, but reversed the district court's award of monetary damages because it was speculative.  We therefore conclude that it was not improper for the district court to award a judgment for amounts it found were owed to Mother.[10]

---

[10] There is a great deal of practical wisdom in this solution.  If the district court had held Father in contempt and ordered the amounts found to be paid, it would have faced the problem of determining whether he had the financial ability to pay if it contemplated incarceration as a means to enforce the order.  *Turner v. Rogers*, 131 S. Ct. 2507, 2516, 180 L. Ed. 2d 452 (2011); *Hicks v. Feiock,* 485 U.S. 624, 638 n.9, 108 S. Ct. 1423, 1433 n.9, 99 L.Ed.2d 721 (1988) (alleged contemnor cannot be incarcerated if it

[¶40] With regard to whether or not the district court was required to make findings of fact supporting its award, we refer to Wyoming Rule of Civil Procedure 52(a), which provides in pertinent part:

> Upon the trial of questions of fact by the court, or with an advisory jury, it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant, unless one of the parties requests it before the introduction of any evidence, with the view of excepting to the decision of the court upon the questions of law involved in the trial, in which case the court shall state in writing its special findings of fact separately from its conclusions of law;  provided, that without such request the court may make such special findings of fact and conclusions of law as it deems proper and if the same are preserved in the record either by stenographic report or by the court's written memorandum, the same may be considered on appeal.  Requests for findings are not necessary for purposes of review.

W.R.C.P. 52(a).

[¶41] The rule requires a court to make findings of fact only if they are requested before any evidence is produced.  *In re MS*, 9 P.3d 984, 986 (Wyo. 2000).  A general finding by the trial court carries with it every specific finding which is supported by the record. *Deroche v. R.L. Manning Co.*, 737 P.2d 332, 335 (Wyo. 1987); *Garriffa v. Taylor*, 675 P.2d 1284, 1287 (Wyo. 1984); *Miller v. Miller*, 664 P.2d 39, 41 n.3 (Wyo. 1983); *Dechert v. Christopulos*, 604 P.2d 1039, 1043-44 (Wyo. 1980); *Skinner v. Skinner*, 601 P.2d 543, 545 (Wyo. 1979); *P & M Cattle Co. v. Holler*, 559 P.2d 1019, 1024 (Wyo. 1977); *Sch. Dist. No. 32 in Fremont Cnty. v. Wempen*, 80 Wyo. 311, 321, 342 P.2d 232, 235 (1959).[11]

[¶42] The record contains no indication that either party asked the district court to make findings of fact before evidence was presented.  The district court was therefore not required to make them.  In the absence of such a request, and of any record of the hearing

---

is demonstrated that he is unable to pay).  Issuing a judgment makes the process self-executing – the judgment creditor can simply execute on whatever non-exempt assets the judgment debtor owns without court intervention, other than perhaps an exemption hearing.  *See* Wyo. Stat. Ann. § 1-15-107 (LexisNexis 2013).

[11] Wyoming's Rule 52(a) is different from its federal counterpart, which requires findings of fact and conclusions of law in all cases.  They cannot be waived by the parties under the federal rule.

or of the district court's oral ruling, the award is assumed to be based on every specific finding necessary to support it.

[¶43] With regard to Father's contention that the district court failed to credit payments he made against the amounts he owed, we have no record which would allow us to assess that contention, either. As already noted, it was Father's responsibility to provide us with that record, and he did not do so. Accordingly, we find no error related to the judgment for $4,538.00.

**Child Support Calculation**

[¶44] The Court generally reviews determinations of child support for an abuse of discretion, at least to the extent that they involve a determination of the parents' income and credits against it. *Swaney v. State, Dep't of Family Servs., Child Support Enforcement*, 2011 WY 105, ¶ 3, 256 P.3d 514, 515 (Wyo. 2011) (citing *Starkey v. Starkey*, 2007 WY 106, ¶ 5, 161 P.3d 515, 516 (Wyo. 2007)). This case presents a slightly different issue, because the district court arrived at a child support figure which is not consistent with its findings of the parties' net incomes or the finding that there was no upward deviation from the presumptive child support in the statutory tables at Wyo. Stat. Ann. § 20-2-304(a) (LexisNexis 2013).[12] Since we are required to review application of the presumptive child support guidelines to the district court's findings of the parties' net income, we must decide a question of law, and we therefore apply the de novo standard of review. *Swaney,* ¶ 3, 256 P.3d at 515.

[¶45] Wyoming Statute § 20-2-311(a) provides that an action to modify a child support order based upon a substantial change in circumstances may be brought by a party at any time. Wyo. Stat. Ann. § 20-2-311(a) (LexisNexis 2013); *see also McCulloh v. Drake*, 2005 WY 18, ¶ 21, 105 P.3d 1091, 1095 (Wyo. 2005). The same statute allows modification of support which has not been adjusted within six months if a twenty percent change in the obligation would result. Father challenges the district court's conclusion that his child support obligation would increase by more than 20% based upon the net income figures it found.

[¶46] We pointed out above that our review of a trial court's discretionary findings is limited when we have no record of the evidence presented to that court. In short, we must generally presume that the trial court's findings were reasonably based on competent and sufficient evidence. *Roberts*, ¶ 27, 304 P.3d at 122; *Golden*, ¶¶ 4, 6, 299 P.3d at 96-97. However, Father's claim of error on this issue is based upon the inconsistency between the net income found and the child support awarded in the district court's order, and thus we have an adequate record to reach the merits.

---

[12] A court may deviate from the presumptive child support if it makes appropriate findings supported by the record as required by Wyo. Stat. Ann. § 20-2-307(a) and (b) (LexisNexis 2013).

[¶47] In the original divorce decree entered in 2006, the court found that Father had $2,700.00 in net monthly income while Mother had $2,076.86, and it therefore ordered Father to pay $527.85 in monthly support. In the order involved in this appeal, the trial court found that Father had $2,262.99 in net income while Mother had $2,862.35. It concluded that this yielded an increased child support obligation of $655.79. The net income figures actually represent a substantial decrease in Father's income and a substantial increase in Mother's since 2006. The findings would therefore result in a decrease in Father's support obligation. Father contends that the net income figures, when applied to the child support tables, would require him to pay $428.00 in monthly support. This would be approximately a 20% decrease, rather than a 20% increase.[13]

[¶48] The calculation is clearly incorrect based on the district court's own findings. We will therefore reverse and remand with directions to conduct whatever proceedings are necessary to arrive at a support calculation which complies with the statutory tables. Whether this can be accomplished by correction of the existing order or whether further proceedings are necessary is a determination we leave to the district court.

## CONCLUSION

[¶49] We find the district court's child support calculation to be erroneous as a matter of law, and we therefore reverse and remand for appropriate proceedings to correct the error. The district court's order is affirmed in all other respects.

---

[13] The online support calculator available through the office of the Laramie County Clerk of Court yields a slightly smaller obligation of $412.77. *See* http://www.laramiecounty.com/_departments/_district _court/calculator.aspx (last visited Oct. 15, 2013). We will leave the details of the calculation to the parties and the district court on remand.