# IN THE SUPREME COURT, STATE OF WYOMING

# 2024 WY 115

### OCTOBER TERM, A.D. 2024

**November 8, 2024**

WADE BOYD BLOEDOW,

Appellant
(Plaintiff),

v.

S-24-0062

NICOLE MAES-BLOEDOW,

Appellee
(Defendant).

*Appeal from the District Court of Sweetwater County*
The Honorable Richard L. Lavery, Judge

*Representing Appellant:*
Robert E. Schroth, Sr., Katharine E. Lovett, Schroth & Schroth, LLC, Jackson, Wyoming.

*Representing Appellee:*
Hilary K. Brewster, Rock Springs, Wyoming.

*Before FOX, C.J., BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**JAROSH, Justice.**

[¶1]    Wade Bloedow (Husband) and Nicole Maes-Bloedow (Wife) married in 2017, but filed for divorce in 2022.  After a bench trial, the district court granted the parties a divorce, divided the marital property, and ordered Husband to pay child support and temporary alimony.  Husband appealed, contending the district court abused its discretion in its property distribution, calculation of Husband's income for purposes of child support, and award of temporary alimony.  He also claimed the district court erred by failing to properly credit him for temporary payments made while the divorce was pending.  We affirm.

## *ISSUES*

[¶2]    Husband formally stated three issues for review but presented argument on four issues, which we rephrase as follows:

1.    Did the district court abuse its discretion in its distribution of marital property pursuant to Wyo. Stat. Ann. § 20-2-214?

2.    Did the district court abuse its discretion in determining Husband's income for the purposes of calculating child support?

3.    Did the district court abuse its discretion in awarding temporary alimony to Wife?

4.    Did the district court abuse its discretion in failing to properly credit Husband for support payments he made during the pendency of the action?

## *FACTS*

[¶3]    After first living together for nearly two years, Husband and Wife married on August 5, 2017.  Both parties brought their own children into the marriage; Wife had a daughter, and Husband had two daughters and a son.  Husband also has an adult daughter.  In 2018, Husband and Wife welcomed twin daughters.  The family lived in Rock Springs, where Husband operated a construction business while Wife stayed home and took care of the children.  At various times, Wife cared for all of the parties' minor children, including those from other relationships.  In 2021, Husband made a net profit of $178,285 operating the construction business.  In 2022, his net profit was an estimated $165,805.

[¶4]    The parties lived in a house Husband began purchasing prior to the marriage for $150,000 under a contract for deed.  Across the street from their home, the parties owned a vacant lot purchased from a business account for $25,000.  Husband used the lot to store equipment and materials for his business.  Wife entered the marriage with no savings

1

account and few assets, while Husband entered it with substantial assets. During the marriage, the parties acquired numerous vehicles, as well as side-by-sides, trailers, and snowmobiles.

[¶5]    In early 2022, Wife relocated to Superior, Wyoming, while Husband remained in the marital home. Wife began working 25-35 hours/week, earning $12/hour. On March 29, 2022, Husband filed for divorce. Wife filed an answer and counter complaint for divorce on April 27, 2022. The following week, the district court entered a Mutual Temporary Restraining Order [Mutual TRO], requiring each party to refrain from "[m]olesting, harassing, disturbing the peace of or assaulting the other party or any other natural or adopted child or ward of either party or otherwise interfering with the personal liberties of the other party." The Mutual TRO also prevented either party from "[t]ransferring, concealing, encumbering or otherwise disposing of each other's property or their joint property without the prior written consent of all Parties or the Court, except as and for the necessities of daily living." In August 2022, the district court entered its Order on Defendant's Motion for Child Support, Temporary Spousal Support, Partial Release of Marital Funds and Attorney Fees. Relevant to this appeal, the district court awarded Wife temporary custody of the parties' twins and child and spousal support in the amount of $3,000/month. The court also ordered Husband to make the monthly payment of $958 on a 2017 Ford Expedition.

[¶6]    In late 2022 Wife filed the following: 1) Motion for Order Allowing Defendant to Retrieve Personal Property and Motion for Order to Show Cause; and 2) Motion for Order Modifying Temporary Support. The district court subsequently entered an order finding Husband in contempt "for his failure to pay temporary support in the full amount of $3,958.00 per month as ordered." The Contempt Order provided Husband could purge his contempt "by collaborating with [Wife] to sell certain assets of the marital estate" and delivering the proceeds to Wife.

[¶7]    After a bench trial in April 2023, the district court granted the parties a divorce, divided the marital property, and awarded Mother custody of the parties' twin daughters, with visitation generally as agreed upon by the parties. In its Judgment and Decree of Divorce and its subsequent Amended Judgment and Decree of Divorce [combined the Divorce Decree], the district court found Husband's testimony about marital property was not credible, he corruptly swore falsely during a previous hearing, and he fraudulently concealed and disposed of or dissipated the parties' assets:

> 11. … [Husband] was not candid with [Wife] or the court. His testimony was, at best, non-responsive and evasive. He contradicted himself on numerous occasions. As an example, he previously testified that he had given a Ford Mustang automobile worth approximately $40,000 to a third party, that he had driven it to Wisconsin (where he lived before moving

2

to Wyoming) and flew back home, and as a result it was no longer a marital asset. The court finds he corruptly swore falsely. At the final hearing he testified that he had bills of sale for the Mustang, a snowmobile trailer, and a camper (though he failed to produce them in discovery) but they were still his, he could get them back from a friend in Bondurant, Wyoming, he just put the title out of his name. The court finds he fraudulently transferred these titles in an effort to commit a fraud on [Wife] and the court.

12. [Husband] engaged in a pattern of concealing or dissipating assets, taking approximately $47,000 from a bank account, and falsely testifying it all went into the business at the July hearing on temporary support. Yet, after [Wife] obtained the bank statements, he had to admit on cross at the November hearing that he spent $13,000 gambling, spent $5,000 on a down payment for a Harley Davidson motorcycle, and spent thousands of dollars on tattoos. These are just some of many examples of [Husband's] failures to be truthful under oath. As such, unless supported [by] other credible evidence, [Husband's] testimony and documents prepared by [Husband] have little or no evidentiary value.

[¶8]     After considering the factors in Wyo. Stat. Ann. § 20-2-114 (LexisNexis 2023) and as a partial substitute for rehabilitative alimony[1], the district court awarded Wife most of the parties' marital assets and assigned Husband most of the debts. Specifically, the court awarded Husband the marital home, but ordered Husband to pay Wife $75,000, equal to half the equity in the home based upon its assessed value and the remaining amount owed. It also awarded Husband the vacant lot across the street and his business, while awarding each party several vehicles and various personal property. The district court ordered Husband to pay the parties' debts, including the home debt, his business debt, Wife's medical debt ($2,796.70), IRS debt, the debt on Wife's vehicle, all the guardian ad litem fees, and $15,000 of Wife's attorney fees. The court ordered Wife to pay any debt that was in her name only or that she incurred after the parties separated.

[¶9]     The district court then determined Husband's presumptive child support obligation was $1,916/month based upon the parties' respective net monthly incomes and ordered Husband to begin paying that amount August 1, 2023. The district court's determination of Husband's income for the purposes of child support was based on its findings as to his 2021 and 2022 income. The court also ordered Husband to pay Wife $1,084 in temporary, rehabilitative alimony from August 1, 2023, through the end of the year (unless Husband

---

[1] Rehabilitative alimony is temporary support awarded for a duration long enough to permit a recipient the time necessary to become self-supporting. 24A Am. Jur. 2d *Divorce and Separation* § 717 (2024).

3

had not complied with the property division the court ordered, in which case alimony would continue until Husband made all required transfers of property and money). It also found Husband still owed Wife $20,450 through May 1, 2023, under the Temporary Support Order and Contempt Order. The district court later amended the original divorce decree and ordered Husband to pay $3,000/month for June and July 2023. Husband appealed.

[¶10] We will provide additional facts as needed below.

## STANDARD OF REVIEW

[¶11] The disposition of marital property, including the decision to award alimony, is committed to the sound discretion of the district court. *Morrison v. Rubio,* 2022 WY 26, ¶ 16, 504 P.3d 251, 255 (Wyo. 2022); *Conzelman v. Conzelman*, 2019 WY 123, ¶ 15, 453 P.3d 773, 778 (Wyo. 2019). We review the district court's division of marital property, including the decision to award alimony, for an abuse of discretion. *Hyatt v. Hyatt,* 2023 WY 129, ¶ 11, 540 P.3d 873, 880 (Wyo. 2023) (citations omitted). To determine whether the district court abused its discretion, "we consider the reasonableness of its decision." *Golden v. Guion,* 2016 WY 54, ¶ 18, 375 P.3d 719, 724 (Wyo. 2016); *see also Verheydt v. Verheydt,* 2013 WY 25, ¶ 19, 295 P.3d 1245, 1250 (Wyo. 2013); *Malli v. Malli,* 2020 WY 42, ¶ 14, 460 P.3d 245, 249 (Wyo. 2020). We focus our analysis on whether the trial court could reasonably conclude as it did. To determine whether the district court abused its discretion, "'we consider only the evidence in favor of the successful party, ignore the evidence of the unsuccessful party, and grant to the successful party every reasonable inference that can be drawn from the record.'" *Malli,* ¶ 14, 460 P.3d at 249 (quoting *Porter v. Porter*, 2017 WY 77, ¶ 12, 397 P.3d 196, 198 (Wyo. 2017)).

[¶12] "We will not disturb a property division in a divorce case, except on clear grounds, as the trial court is usually in a better position than the appellate court to judge the parties' needs and the merits of their positions." *Metz v. Metz,* 2003 WY 3, ¶ 6, 61 P.3d 383, 385 (Wyo. 2003) (citing *Paul v. Paul*, 616 P.2d 707, 712 (Wyo. 1980); *and Warren v. Warren*, 361 P.2d 525, 526 (Wyo. 1961)). An abuse of discretion occurs "when 'the property disposition shocks the conscience of this Court and appears to be so unfair and inequitable that reasonable people cannot abide it.'" *Hyatt,* ¶ 11, 540 P.3d at 880 (quoting *Innes v. Innes*, 2021 WY 137, ¶ 16, 500 P.3d 259, 262 (Wyo. 2021)).

[¶13] Following a bench trial, we will not set aside findings of fact unless they are clearly erroneous. A finding is clearly erroneous if "'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Meiners v. Meiners,* 2019 WY 39, ¶ 8, 438 P.3d 1260, 1266 (Wyo. 2019) (quoting *Galiher v. Johnson*, 2018 WY 145, ¶ 6, 432 P.3d 502, 507 (Wyo. 2018)). We will not substitute ourselves for the district court as finders of fact, and we will not re-weigh disputed evidence since the district court is in the best position to assess the witnesses' credibility and weigh their testimony. *Meiners*, ¶ 8, 438 P.3d at 1266 (citing *Galiher*, ¶ 6, 432 P.3d at 507).

## DISCUSSION

### *Property Division*

[¶14]  Husband argues the district court abused its discretion when it awarded the majority of the marital estate to Wife and assigned Husband nearly all the marital debts.  First, Husband contends the district court improperly ordered him to pay Wife $75,000 in equity from the parties' marital home.  Husband does not object to receiving the home in the property distribution, nor does he allege he was entitled to receive it without payment to Wife because it was his pre-marriage asset.  Rather, Husband argues he and Wife had no equity in the home because he was purchasing it under a contract for deed, and it was therefore improper to award Wife half of the so-called equity.  Second, Husband argues the district court abused its discretion in the overall distribution of assets and debts because it failed to consider the condition in which Husband would be left after the divorce and that he owned certain property prior to the marriage.

[¶15]  Wyo. Stat. Ann. § 20-2-114(a) governs the division of marital property in a divorce:

> [I]n granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children.

[¶16]  Under § 20-2-114(a), all the parties' property is subject to distribution, including property one party owned prior to the marriage.  *Hall v. Hall,* 2005 WY 166, ¶ 8, 125 P.3d 284, 287 (Wyo. 2005).  "'There are no specific guidelines as to the weight the district court must afford the statutory considerations when making a property division.'"  *Hyatt,* ¶ 16, 540 P.3d at 881 (quoting *Malli*, ¶ 16, 460 P.3d at 249) (other citations omitted).  The statutory considerations "'[do] not require an equal division of property, and we have said a just and equitable division is as likely as not to be unequal.'"  *Hyatt,* ¶ 16, 540 P.3d at 881 (quoting *Dutka v. Dutka*, 2023 WY 64, ¶ 44, 531 P.3d 310, 323 (Wyo. 2023) (citations and internal quotation marks omitted)).  The equity of a property division is evaluated based on the overall distribution, not a narrow focus on the effect of any single disposition.  *Morrison,* ¶ 19, 504 P.3d at 255-56 (quotation and citations omitted).

### a.  *Marital Home*

[¶17]  We first turn to Husband's claim that the district court improperly ordered him to pay wife $75,000 after it determined there was $150,000 of equity in the marital home.

5

The marital home awarded to Husband in the property distribution is 1,800 square feet and includes three bedrooms and an office Husband uses for his business. It includes a garage and an outbuilding he also uses for his business. In support of his argument that the parties had no equity in the home because he was purchasing it under a contract for deed, Husband cites *In re Estate of Ventling,* 771 P.2d 388, 390 (Wyo. 1989). There, we discussed whether an equitable interest in property purchased under a contract for deed was susceptible to a judgment lien. As we explained, under a contract for deed the seller agrees to accept payments from the buyer, usually over a period of time, until the price set by the contract has been paid. *Id.* at 389. When that condition is satisfied, the seller is bound to deliver a deed to the buyer. *Id.* At all times prior to the final payment and delivery of the deed, even though the buyer usually has possession, legal title remains vested in the seller. *Id.* The interest of the buyer is equitable, not legal.[2] *Ventling*, 771 P.2d at 389. Ultimately, we held in *Ventling* that a statutory judgment lien did not attach to the equitable interest of a purchaser of land under a contract for deed. *Id.* at 389-90. According to Husband, *Ventling* stands for the proposition that Husband and Wife never accrued any true equity in the marital home, and that any equity interest in a contract for deed home is fictitious prior to satisfaction of the entire contract. We disagree, at least in the context of a district court's ability to engage in a division of marital property under § 20-2-114(a).

[¶18] There are limitations on a buyer's rights in property he is purchasing under a contract for deed. As we stated in *Ventling*, "the interest of the buyer is equitable, not legal." *Ventling,* 771 P.2d at 389; *see also James v. James*, 2021 WY 96, ¶ 26, 493 P.3d 1258, 1265 (Wyo. 2021) (stating although the purchaser usually receives the right to possession, his interest in an installment land contract is equitable, not legal). Regardless, the district court was justified in determining the parties' interest in the home had value for the purposes of its distribution of the parties' marital assets. Specifically, the district court had the discretion to determine there was an equitable interest based upon the value of the home, the amount already paid under the contract for deed, and the limited amount still left to pay before legal title transferred ($40,000). As Wife points out in her brief, value accrued as the couple made payments on the contract. While Husband argues any value in the home will be lost if he fails to make future payments, that scenario is purely hypothetical. The home had value at the time the district court entered its decree.[3] *Beckle v. Beckle*, 452 P.2d 205, 209 (Wyo. 1969) (stating whether the division of marital property is just and equitable is determined as of the date the court enters the decree). Moreover, if the district court did not award Wife anything related to the interest the parties held in the home, Husband would own a $190,000 home once he finished paying off the final $40,000

---

[2] The fundamental difference distinguishing a traditional mortgage-based purchase from an installment land contract is that with a mortgage fee title has vested in the purchaser/mortgagor. *Metropolitan Mortg. & Sec. Co., Inc. v. Belgarde*, 816 P.2d 868 (Wyo. 1991).

[3] Husband's counsel admitted this at trial, stating "it's one of the assets, to a certain degree, because it had a value before the marriage, and it has a value now, or as of the time they separated, and we're—it's not an easy thing to calculate, and the same with the—the business. It is disingenuous for Husband to now argue the home, where he lives and operates his business, somehow has no value.

6

owed under the contract, even though the parties both contributed to the marital home during their marriage.

[¶19] In addition, the district court's determination that the parties had $150,000 in equity in the marital home based upon its value was not clearly erroneous. Wife testified the value of the home was $190,000, according to realtors' valuations and the assessor's valuation. Both parties testified that $40,000 remained owed on the home. The district court then concluded, "[w]ith respect to the marital home, the court finds the equity is $150,000, based on the assessed value and credible testimony and the amount owed, and Defendant should receive half the equity in the marital home of the parties."

[¶20] Given these circumstances, we conclude the district court acted reasonably and did not abuse its discretion related to its award of $75,000 to Wife related to the value of the marital home.

### b. Division of Marital Estate/Debts

[¶21] Next, Husband argues the district court abused its discretion by improperly awarding Wife the majority of the marital estate and assigning Husband nearly all of the marital debt without considering the condition in which Husband would be left after the divorce or the party through whom the property was acquired. According to Husband, the district court put him in the impossible position of either declaring bankruptcy or selling his business assets to satisfy the requirements of the property division. Husband also claims the district court improperly combined pre-marital property with marital property and even awarded Wife some of Husband's pre-marital property, including a snowmobile trailer and truck.

[¶22] This Court "'evaluates whether the district court's property division is equitable from the perspective of the overall distribution rather than from a narrow focus on the effects of any particular disposition.'" *Innes*, ¶ 17, 500 P.3d at 262 (quoting *Stevens v. Stevens,* 2014 WY 23, ¶ 11, 318 P.3d 802, 807 (Wyo. 2014)). A district court can award assets and assign debt to either party as part of its equitable division of the marital estate. *Malli,* ¶ 21, 460 P.3d at 250 (citing *Dane v. Dane*, 2016 WY 38, ¶ 31, 368 P.3d 914, 920 (Wyo. 2016) and Wyo. Stat. Ann. § 20-2-114). "'In fact, a trial court is obliged to take all marital property into account when deciding how to allocate marital property,' including the parties' debts." *Malli,* ¶ 21, 460 P.3d at 250 (quoting *Hoffman v. Hoffman*, 2004 WY 68, ¶ 12, 91 P.3d 922, 925-26 (Wyo. 2004)).

[¶23] We again disagree with Husband that the district court abused its discretion. The Divorce Decree is clear that the district court expressly considered the statutory factors under § 20-2-114(a) when dividing the marital property, including the two factors Husband claims the district court ignored. First, the district court found "the most important factors [were:] ***the condition in which [the parties would] be left by the divorce***[;] the burdens

imposed upon the property for the benefit of either party and children[;] and the [parties'] substantial disparity in earnings and earning capacity." Because of these circumstances, the court recognized an equal distribution of debts and assets between the parties would not be equitable and awarded Wife the majority of the assets and Husband the majority of the debts. Regardless, Husband still received considerable assets in the distribution, including the marital home, the lot where he stored business vehicles and equipment, a construction business, three vehicles, numerous trailers, a motorcycle, most of the furniture, more than seventy guns, and various other personal property.

[¶24] In addition, the district court expressly explained in the Divorce Decree why it regarded who brought property to the marriage a less important factor:

> [T]he parties cohabitated as husband and wife for a substantial period before they were married (approximately two years). Before and after they officially married, they combined their finances. While Plaintiff had more premarital property than Defendant, they commingled all or essentially all of their property, and the court finds that, except as otherwise noted, whether property is premarital is not a material factor for the distribution of assets and debts of the parties in this case.

[¶25] The district court had other good reasons to award Wife most of the marital estate. Specifically, the court heard testimony regarding how Husband depleted the marital estate and engaged in fraudulent transfers. For example, Husband took as much as $100,000 from the parties' joint savings account after Wife moved out, spending some of it on gambling, a Harley Davidson motorcycle, and tattoos. Testimony indicated Wife's medical bills he was ordered to pay were a result of physical injuries he caused. As to the business debt and the home debt, the court awarded Husband both of those assets, and it was well within the court's discretion to allocate the debt associated with the assets to Husband.

[¶26] Even if Husband is correct that he will need to sell business assets to satisfy his obligations under the Divorce Decree, this Court has "approved cash awards to spouses despite the fact that there was insufficient cash in the marital estate to cover the judgment." *Bagley*, ¶ 28, 311 P.3d at 150 (citing *Boyle v. Boyle*, 2006 WY 124, ¶¶ 21-23, 143 P.3d 368, 374 (Wyo. 2006); *Humphrey v. Humphrey*, 2007 WY 72, 157 P.3d 451 (Wyo. 2007)). In addition, the district court's findings indicate Husband is at least partially to blame for the scenario considering his pattern of dissipating assets, which "may be accounted for by the court in a subsequent property division." *Bagley*, ¶ 27, 311 P.3d at 150.

[¶27] Considering the overall property distribution in this case in light of the underlying evidence, we find the district court could reasonably conclude as it did, and its overall

8

division of property does not shock the conscience of this Court. *See Morrison*, ¶ 30, 504 P.3d at 257 (citing *Begley v. Begley*, 2020 WY 77, ¶ 20, 466 P.3d 276, 283 (Wyo. 2020)).

## *Income Calculation for Child Support*

[¶28] Husband next argues the district court abused its discretion in determining his income for purposes of its child support award of $1,916/month—the presumptive amount under Wyo. Stat. Ann. § 20-2-304 (LexisNexis 2023). Specifically, Husband contends the district court disliked him and therefore disregarded his testimony and other credible evidence to find his 2022 income was $165,805, when it was actually $65,803. Husband argues this abuse of discretion resulted in the district court improperly determining Husband's annual income was $172,045 based on the average of his 2021 and 2022 incomes.

[¶29] Child support calculations are governed exclusively by Wyo. Stat. Ann. §§ 20-2-301, *et seq.* (LexisNexis 2023). The first step in calculating child support is to determine each parent's monthly income and monthly net income. *Ackerman v. Ott,* 2014 WY 93, ¶ 9, 330 P.3d 271, 273 (Wyo. 2014) (citing *Ready v. Ready,* 2003 WY 121, ¶ 12, 76 P.3d 836, 839 (Wyo. 2003)). "Income" and "net income" for these purposes are defined by statute:

> (ii) "Income" means any form of payment or return in money or in kind to an individual, regardless of source. Income includes, but is not limited to wages, earnings, salary, commission, compensation as an independent contractor ... and any other payments made by any payor .... In determining income, all reasonable unreimbursed legitimate business expenses shall be deducted. ...
> (iii) "Net income" means income as defined in paragraph (ii) of this subsection less personal income taxes, social security deductions, [and] cost of dependent health care coverage for all dependent children ....

Wyo. Stat. Ann. § 20-2-303(a)(ii)-(iii) (LexisNexis 2023). Further, income averaging for the purpose of calculating child support is appropriate where circumstances require it, including when a party's income fluctuates. *Zupan v. Zupan*, 2016 WY 78, ¶ 14, 377 P.3d 770, 775 (Wyo. 2016); *Fleenor v. Fleenor*, 992 P.2d 1065, 1070 (Wyo. 1999).

[¶30] During trial, the district court heard testimony about the value of Husband's business and the income it generated. It also received as evidence Husband's business tax returns and profit and loss statements [P&L statements]. Regarding those documents, the court stated in the Divorce Decree, "[t]here is reason to believe that they are not accurate. But they do shed some light on the earning capacity of the business." The court specifically

considered the P&L statements for 2021 and 2022 to help in determining child support but stated it did not believe the 2022 expenses stated in the documents were accurate. This was entirely within the district court's discretion because it assigned little or no evidentiary value to Husband's testimony or the documents he prepared after determining he corruptly swore falsely and repeatedly lied under oath. Further, the court concluded Husband did not meet his burden to show the unreimbursed business expenses that would justify the net profit claimed in the 2022 P&L statement. It found Husband could not support many of his alleged expenses with receipts, and concluded, "there's no credible evidence or explanation why gross revenue would decrease by 7% and yet net profit would decrease by 67%."[4] The court then estimated income for 2022 of $165,805 and averaged that with Husband's 2021 income of $178,285, resulting in an estimated annual income of $172,045. After deducting Husband's federal income tax burden and social security payments, the court arrived at a net monthly income estimate of $9,297 and stated it found "no other credible evidence to calculate [Husband'] income.[5] The court further stated, "this income estimate is more consistent with other evidence of the financial picture of [Husband's] business," and used as an example a 2022 transaction where Husband sold "a truck for approximately $30,000 and replac[ed] it by buying a truck for approximately $90,000."

[¶31] We have consistently stated "the trial judge is in the best position to assess the credibility of witnesses and weigh their testimony[.]" *Morrison*, ¶ 17, 504 P.3d at 256 (citing *Drake v. McCulloh*, 2002 WY 50, ¶ 18, 43 P.3d 578, 584 (Wyo. 2002)). In *Morrison*, this Court addressed a similar argument about credibility, where we said "Husband asks us to do what our standard of review precludes—'to reweigh the evidence and give all favorable inferences to the evidence supporting Husband's position.'" *Morrison*, ¶ 23, 504 P.3d at 256 (quoting *Campbell v. Hein*, 2013 WY 131, ¶ 14, 311 P.3d 165, 168 (Wyo. 2013)). As in *Morrison*, "'we decline to disturb the [district] court's credibility rulings'—where they are supported by sufficient evidence." *Morrison*, ¶ 23, 504 P.3d at 256 (quoting *Hays v. Martin*, 2021 WY 107, ¶ 28, 495 P.3d 905, 911-12 (Wyo. 2021) (other citations omitted)). In addition, because Husband failed to carry his burden to credibly establish his 2022 business expenses, it was appropriate for the district court to determine them in proportion to business revenue using the business's 2021 expenses.

---

[4] The P&L statement Husband presented at trial for 2021 showed gross revenue of $305,981.69, with a net income after expenses of $178,285.03 (58% of gross revenue). For 2022, the P&L statement showed $286,339.67 in gross revenue but only $38,657.86 in net income (13.5% of gross revenue). Husband's witness, Christine Well, testified that she did bookkeeping for Husband, and that for the 2022 P&L statement she prepared she simply went through transactions on Husband's bank registry and determined whether to assign them as business expenses. On cross examination she testified she only had "a few" receipts or invoices to support the transactions she entered on the P&L statement. So, for example, she determined $19,000 in purchases at gas stations were business expenses, without reviewing receipts or invoices to determine what was purchased.

[5] The court calculated Mother's monthly net income at $1,432.

[¶32]  As a result, we find the district court did not abuse its discretion in determining Husband's income for 2022 was $165,805, and the average of his income from 2021 and 2022 was $172,045 for the purposes of calculating presumptive child support.

### *Continuing Alimony*

[¶33]  In his third issue on appeal, Husband asserts the district court abused its discretion when it awarded Wife continuing alimony of $1,084/month through December 2023, although he admits "alimony may be warranted in this case."  He also alleges it was an abuse of discretion to condition discontinuation of the monthly alimony obligation at the end of 2023 on compliance with his other financial obligations under the divorce decree. According to Husband, the district court set him up for failure because it knew or should have known he did not have enough money to pay the $1,084/month or satisfy the other financial obligations under the divorce decree.  As support, Husband repeats his claims about the district court abusing its discretion in the property division and its determination of his income in 2022.  Husband also asserts that, consistent with our precedent, property distribution is preferable to alimony, although the court already awarded Wife most of the marital property.

[¶34]  Along with property distribution, § 20-2-114(a) guides a court's award of alimony and provides:

> The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability to pay and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.

"'[A]n award of alimony requires evaluation of the financial needs of each party'" and is impacted by the child custody determination.  *Linden v. Linden*, 2020 WY 9, ¶ 12, 455 P.3d 1254, 1258 (quoting *Carlton v. Carlton*, 997 P.2d 1028, 1035 (Wyo. 2000) (internal citation omitted)); *see also, Ready*, ¶ 22, 76 P.3d at 842.

[¶35]  When determining whether to award alimony, the district court must consider both "the ability of the payor spouse to pay and the necessity of support of the payee."  *Neville v. Neville,* 8 P.3d 1072, 1073 (Wyo. 2000) (citing *Sellers v. Sellers*, 775 P.2d 1029, 1032 (Wyo. 1989)).  Alimony is intended as a post-divorce substitute for support provided during a marriage when a spouse cannot adequately provide for herself.  *Hyatt,* ¶ 20, 540 P.3d at 882 (citing *Kamm v. Kamm*, 2016 WY 8, ¶ 10, 365 P.3d 779, 782 (Wyo. 2016) (other citations omitted)).  However:

> "An award of property is a preferable modern substitute for alimony. ... When alimony is awarded in the absence of a stipulated settlement between the parties, the record must reflect some evidence that alimony, with its special features, is needed. If the intent is to adjust the equities between the parties at the time of the divorce, property division, which may encompass a series of payments, is the preferable method."

*Hyatt,* ¶ 20, 540 P.3d at 882 (quoting *Johnson v. Johnson*, 11 P.3d 948, 951 (Wyo. 2000) (citations omitted). "'[U]nder ordinary circumstances[,] ... one spouse should not have a perpetual claim on the earnings of the other [and a] divorce ... should sever the ties of the parties and they should begin to start their lives anew.'" *Stevens,* ¶ 15, 318 P.3d at 807-08 (quoting *Belless v. Belless,* 2001 WY 41, ¶ 8, 21 P.3d 749, 751 (Wyo. 2001), and *Grosskopf v. Grosskopf*, 677 P.2d 814, 821 (Wyo. 1984)). However, in some cases, "'alimony may be a necessity.'" *Id.* (quoting *Belless,* ¶ 8, 21 P.3d at 751).

[¶36] Here, the district court specifically found "[Wife] has a need for, and Husband has the ability to pay, temporary, rehabilitative alimony." The findings in the Divorce Decree also sufficiently support those determinations. As explained above, it was reasonable for the district court to conclude Husband's income was $9,297/month. The district court also concluded Wife's income was $1,432/month, and that for most of the parties' marriage she did not work so she could stay home with the children. *See, e.g., Hendrickson v. Hendrickson*, 583 P.2d 1265, 1268 (Wyo. 1978) (finding because the mother was not employed during the marriage and had a young child at the time of the divorce, "[a] period of transition of four years, during which she would receive alimony assistance, does not appear unreasonable and was within the court's discretion upon the basis of the evidence before it"). Finally, it is apparent that the district court considered property distribution as an alternative to alimony, since it expressly stated its division of the marital assets was also "a partial substitute for rehabilitative alimony." However, the district court found that, at least temporarily, alimony was also needed. This was not an abuse of discretion. *See, e.g., Hyatt*, ¶ 26, 540 P.3d at 884 (concluding it was not unreasonable to award additional alimony in the form of financial support even when the district court awarded extra property as partial alimony). It was also not an abuse of discretion for the district court to order alimony to continue beyond December 2023 in the event Husband did not meet his other financial obligations under the Divorce Decree. If Husband failed to satisfy his obligation to pay Wife the overdue support for 2022 and 2023, Wife's need for alimony would likely continue into 2024.

[¶37] Based on the court's findings that Wife had a need for temporary rehabilitative alimony and Husband had the ability to pay it, we find the district court did not abuse its discretion in awarding temporary alimony to Wife.

## *Credit for Spousal and Child Support Payments*

[¶38]   Finally, Husband argues the district court abused its discretion in failing to give him credit for certain temporary spousal and child support payments he made while the divorce was pending.  Recall that in 2022, the district court granted Wife temporary spousal support of $3,958/month beginning August 2022.  Specifically, the court ordered Husband to pay Wife's vehicle payment of $958/month, as well as $3,000/month directly to Wife.  Later in 2022, the district court entered the Contempt Order, finding Husband in contempt for his failure to pay temporary support in the full amount of $3,958/month as previously ordered.  The court ordered Husband could "purge" his contempt by collaborating with Wife to sell certain assets of their marital estate and pay his temporary support obligation with the proceeds.  Specifically, the Contempt Order stated:

> 6.     [Husband] may purge his contempt by collaborating with [Wife] to sell certain assets of the marital estate as follows:
>> a.     The parties shall agree on the items to be sold and the order of sale.
>> b.     All recreational and other vehicles not being primarily driven by either party may be sold except for the 2 diesel trucks.
>
> 7.     [Husband] may purge his contempt by delivering the proceeds of sale equal to the full amount of his temporary support obligation due to [Wife] as soon as possible.
>
> 8.     All proceeds of sale in excess of [Husband's] temporary support obligation shall be held in [Wife's] attorney's trust account and distributed equally to the parties such that each party receives one-half of the proceeds of sale.  [Husband's] support obligation shall come out of his half of the proceeds of the sale.

[¶39]   At trial, it was established that between August 2022 and April 2023 Husband made various payments to Wife, including payments associated with the sale of vehicles in an effort to "purge" his contempt and catch up on past due support payments.  Relevant to the issue on appeal, Husband sold a blue 2015 truck for $6,000, all of which he gave to Wife, and a white pickup truck for $8,500, $5,000 of which he gave to Wife.  Wife testified about the payments and her understanding that when Husband sold assets, half of the proceeds were hers as her share of marital property, and any additional proceeds Husband paid her should be credited to "purge" his contempt under the Contempt Order (i.e., credited against the past due spousal and child support).  So, when Husband gave Wife the entire $6,000 from the sale of the blue 2015 truck, Wife considered $3,000 of the money her share of the proceeds from the sale of a marital asset.  She then considered the other $3,000 (what would have been Husband's share of the proceeds) as credit against his past due support payments.

13

She engaged in a similar accounting for the white pickup truck. Ultimately, Wife testified that as of the time of trial, Husband still owed her $17,450 in past due support payments.

[¶40] While Wife testified extensively about these sales and her accounting of past due support payments, the court heard limited testimony from Husband about the sales and his payments to Wife. In that testimony, Husband did not refute Wife's testimony that he owed her $17,450 in past due support payments or provide any alternative amount he alleged he still owed. While Husband's counsel questioned Wife at trial about whether Husband owned certain vehicles prior to the date the parties married, Wife reiterated that her accounting of past due support payments was correct.

[¶41] In the Divorce Decree, the district court found Husband still owed Wife $20,450 in past support through May 1, 2023. This is consistent with Wife's testimony that she was still owed $17,450 as of the date of trial, along with the court's award of an additional $3,000 in temporary spousal and child support for May 2023. On appeal, Husband argues Wife should have credited him for the entire amount of payments he gave Wife for the blue 2015 truck and the white pickup, as they were his pre-marital property.[6] As a result, he asserts he only owes $13,200 for past due spousal/child support, and the district court abused its discretion by ordering him to pay Wife consistent with her accounting.

[¶42] While the parties' briefing discusses this issue, including whether the Contempt Order contemplates crediting Husband differently for property Husband alleges he owned before the marriage, the Divorce Decree is silent on this issue. It simply states, "Husband owes Wife past due spousal/child support through May 1, 2023, in the amount of $20,450.00." Importantly, neither Husband nor Wife requested special findings of fact and conclusions of law pursuant to Rule 52(a)(1)(A) of the Wyoming Rules of Civil Procedure, and the Divorce Decree does not contain any findings of fact related to this particular dispute. "When no such request is made, 'it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant.'" *Begley*, ¶ 25, 466 P.3d at 284 (quoting Rule 52(a)(1)). "Furthermore, '[a] general finding by the trial court carries with it every specific finding which is supported by the record.'" *Id.* (quoting *Walker v. Walker*, 2013 WY 132, ¶ 41, 311 P.3d 170, 179 (Wyo. 2013)).

[¶43] Under these circumstances, we can reasonably infer the district court accepted Wife's testimony about her accounting and crediting for Husband's sale of property. *Malli*, ¶ 14, 460 P.3d at 249. Moreover, and without a request for Rule 52 findings, the award of $20,450 carries with it a finding that Wife properly credited Husband for payments he gave her, including those associated with the sale of marital (as opposed to pre-marital) property prior to trial. *Begley*, ¶ 25, 466 P.3d at 284. This finding is also consistent with Paragraphs

---

[6] Husband never presented any argument to the district court about this issue. While the district court gave the parties the opportunity to file written closing statements and proposed decrees of divorce, Husband failed to file either, even after missing the original deadline and receiving an additional opportunity to file them.

14

6 and 8 of the Contempt Order. Specifically, Paragraph 6 appears to categorize the parties' vehicles as marital property: "[Husband] may purge his contempt by collaborating with [Wife] to sell certain assets of the *marital estate* as follows: . . . All recreational and other vehicles not being primarily driven by either party may be sold except for the 2 diesel trucks." Paragraph 8, in discussing the requirement to hold excess proceeds in trust, contemplates Husband's future support obligations coming out of "his half of the proceeds of the sale." Finally, the award is consistent with the district court's pronouncement in the Divorce Decree that the parties commingled their property throughout the time they lived together and were married such that whether property was owned prior to the marriage was not a material factor.

[¶44] For these reasons, we find the district court did not abuse its discretion in ordering Husband owed Wife $20,450 in past due support payments at the time it entered the Divorce Decree.

## *CONCLUSION*

[¶45] The district court did not abuse its discretion in the property distribution, calculation of Husband's income, award of temporary alimony, or award for past due support payments in the Divorce Decree.

[¶46] Affirmed.