# IN THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 69

APRIL TERM, A.D. 2023

July 12, 2023

MARY ELIZABETH CORBITT f/k/a MARY
ELIZABETH DAVIDSON,

Appellant
(Plaintiff),

v.                                                                    S-22-0308

MICHAEL AARON DAVIDSON,

Appellee
(Defendant).

*Appeal from the District Court of Sweetwater County*
*The Honorable Suzannah G. Robinson, Judge*

*Representing Appellant:*
Rennie Phillips, Rennie Phillips Law, LLC, Laramie, Wyoming.

*Representing Appellee:*
Elizabeth A. Lempp, Eric Phillips Law Office, Rock Springs, Wyoming.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Mary Elizabeth Corbitt (Mother) challenges the district court's order modifying Michael Aaron Davidson's (Father) child support.  She contends the court abused its discretion when it calculated Father's net monthly income without first obtaining sufficient financial information.  She also contends the court abused its discretion by calculating her net monthly income contrary to the evidence presented.  We affirm.

## *ISSUES*

[¶2]    We rephrase the issues as:

> I.    Whether the district court had sufficient financial information to calculate Father's net monthly income.

> II.   Whether the district court abused its discretion by calculating Mother's net monthly income contrary to the evidence presented.

## *FACTS*

[¶3]    Mother and Father divorced in 2017.  They had three minor children at that time.  The parties' divorce decree incorporated a child custody agreement wherein they agreed to joint legal custody and split physical custody with visitation.  Mother had physical custody of two minor children and Father had physical custody of one minor child.  The parties also agreed Father would pay monthly child support in the amount of $3,500.00.  The child custody agreement did not state the parties' net monthly incomes used to calculate child support.  Prior to and following the divorce, Mother worked at a credit union and Father worked as a chiropractor at Davidson Chiropractic Clinic.

[¶4]    Father filed a petition to modify child support in May 2021.  In the petition, Father asserted a modification of child support was appropriate because two of the parties' children had reached the age of majority, more than six months had passed since the entry of the divorce decree with no child support modification, and his child support obligation would change by 20 percent or more.  Mother responded and requested the court deny Father's petition.  She also filed a confidential financial affidavit indicating her net monthly income was $1,635.96.  She attached two pay stubs, her tax returns for 2018 and 2019, and W-2 forms from 2018 and 2019.[1]  Father filed a confidential financial affidavit in June 2021 indicating his net monthly income was $5,755.39.  He attached three pay stubs.

---

[1] A W-2 form is a wage and tax statement employers provide to employees and the federal government showing the employee's annual wages and the amounts withheld for federal income tax, social security, or

1

[¶5]     In March 2022, Mother filed a motion to compel discovery seeking various documents from Father related to his business.  The court held a hearing on the motion the next month.  In its written order, the court determined both parties failed to file sufficient financial affidavits and incorrectly calculated their net monthly incomes.  It ordered both parties to update their financial affidavits prior to the child support hearing.

[¶6]     Both parties filed updated financial affidavits.  Mother calculated her net monthly income to be $1,745.24 and attached one pay stub reflecting her earnings from January through March 2022, her W-2 for 2021, and her 2020 tax return.  Father calculated his net monthly income to be $9,513.59 for employment income, and $3,788.75 for self-employment income.  Father attached several documents, including his 2020 and 2021 tax returns, 14 pay stubs ranging from August 2021 through February 2022, and a profit and loss statement for Davidson Chiropractic Clinic for January through December 2019 and 2020.

[¶7]     At the child support hearing, the district court heard testimony from both parties.  The court presented its oral ruling the next month.  In so ruling, it determined there had been a substantial change in circumstances which justified modification of the original child support order.  It then explained Father's net monthly income was "difficult to determine[]" but it "can't just choose to not make a determination.  The Court has to make a determination and do the best that it can with the information before it so that's what I am going to do."  The court also noted it reviewed and relied on all the information presented along with the parties' testimony.  However, the court acknowledged both parties had been loose with financial figures and had credibility issues.

[¶8]     The court found Mother's net monthly income to be $2,695.93.  It stated its calculation was based on Mother's most recent pay stub attached to her updated financial affidavit.  It determined Mother's gross income from the 84 days between January and March reflected in the pay stub.  It then deducted Mother's taxes and a bonus payment because no testimony indicated Mother regularly received bonus payments.  The court did not deduct Mother's insurance payments because she was not required to provide insurance for the minor child.  After the deductions, the court divided the total net income by 84 to determine a daily income, calculated a yearly income by multiplying that number by 365, and reached the net monthly income after dividing the yearly income by 12.  The court acknowledged that by calculating Mother's net monthly income based on evidence of her most recent earnings, the amount was higher than that indicated in the prior year's W-2.

[¶9]     The court found Father's net monthly income to be $24,770.44.  It calculated this figure based primarily on the 2021 and 2020 tax returns he filed jointly with his wife, pay stubs, and his financial affidavit.  The court deducted Father's taxes but added back

Medicare.  I.R.S., *About Form W-2, Wage and Tax Statement* (March 8, 2023), https://www.irs.gov/forms-pubs/about-form-w-2.

$20,000—the amount Father had been refunded after overpaying the IRS. It also deducted Father's wife's income based on the tax returns and his testimony about his wife's earnings. It further deducted $249 from the net monthly income for the health insurance Father paid for the minor child. The court concluded these calculations resulted in a monthly child support obligation of $2,252.29. It then found Father had overpaid child support between June 2021 and July 2022. The court stated it would deduct the overpayment by dividing the total overpayment by the number of months the child would remain a minor and then subtract that number from Father's monthly child support obligation.

[¶10] In its written order, the district court restated the amounts it had calculated for the parties' net monthly incomes without further explaining how it performed the calculations.[2] It noted Mother retained primary physical custody of the minor child and Father received visitation on alternating weekends and holidays. The court found Father's presumptive monthly child support obligation to be $2,252.29. The court also found Father had overpaid child support by $3,220.23. Accordingly, it reduced Father's monthly support obligation by $128.81, which accounted for the total overpayment divided by the 25 months the child would remain a minor. Overall, the court modified Father's monthly child support obligation to $2,123.48.

[¶11] Mother timely appealed.

### DISCUSSION

[¶12] We review the district court's order modifying Father's child support obligation for an abuse of discretion. *Tucker v. Tucker*, 2022 WY 32, ¶ 20, 505 P.3d 198, 202 (Wyo. 2022) (citing *Taulo-Millar v. Hognason*, 2022 WY 8, ¶ 14, 501 P.3d 1274, 1279 (Wyo. 2022); *Marquis v. Marquis*, 2020 WY 141, ¶ 20, 476 P.3d 212, 218 (Wyo. 2020)).

> A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained.

---

[2] The court's written order states Mother's net monthly income as $2,695.83. The court's oral ruling, however, first found the net monthly income to be $2,695.93 but stated the amount of $2,695.83 later in the ruling. "As we have in other cases, we choose to ignore the small discrepancy." *Egan v. Egan*, 2010 WY 164, ¶ 25, 244 P.3d 1045, 1052 (Wyo. 2010) (choosing to ignore a small discrepancy in the district court's child support calculation) (citations omitted).

*Id.* (quoting *Lemus v. Martinez*, 2021 WY 66, ¶ 32, 486 P.3d 1000, 1011 (Wyo. 2021) (*Lemus II*)). The district court's discretion is guided by the child support statutes. *Hehn v. Johnson*, 2022 WY 71, ¶ 27, 511 P.3d 459, 464 (Wyo. 2022) (citation omitted). "We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle." *Marquis*, ¶ 20, 476 P.2d at 218 (quoting *Kidd v. Jacobson*, 2020 WY 64, ¶ 13, 463 P.3d 795, 798 (Wyo. 2020)).

[¶13] The first step the court takes in calculating child support is determining the parties' monthly incomes and net monthly incomes. *Tucker*, ¶ 23, 505 P.3d at 203 (citation omitted). The terms "income" and "net income" are defined in Wyo. Stat. Ann. § 20-2-303(a)(ii) and (iii):

> (ii) "Income" means any form of payment or return in money or in kind to an individual, regardless of source. Income includes, but is not limited to wages, earnings, salary, commission, compensation as an independent contractor, temporary total disability, permanent partial disability and permanent total disability worker's compensation payments, unemployment compensation, disability, annuity and retirement benefits, and any other payments made by any payor . . . . In determining income, all reasonable unreimbursed legitimate business expenses shall be deducted . . .
>
> (iii) "Net income" means income as defined in paragraph (ii) of this subsection less personal income taxes, social security deductions, cost of dependent health care coverage for all dependent children, actual payments being made under preexisting support orders for current support of other children, other court-ordered support obligations currently being paid and mandatory pension deductions. Payments towards child support arrearage shall not be deducted to arrive at net income[.]

Wyo. Stat. Ann. § 20-2-303(a)(ii)–(iii) (LexisNexis 2023).

[¶14] Wyo. Stat. Ann. § 20-2-308 addresses the financial information a district court must obtain to establish or modify child support. It states:

> (a) No order establishing or modifying a child support obligation shall be entered unless financial affidavits on a form approved by the Wyoming supreme court which fully discloses the financial status of the parties have been filed, or the court has held a hearing and testimony has been received.

4

(b) Financial affidavits of the parties shall be supported with documentation of both current and past earnings. Suitable documentation of current earnings includes but is not limited to pay stubs, employer statements, or receipts and expenses if self-employed. Documentation of current earnings shall be supplemented with copies of the most recent tax return to provide verification of earnings over a longer period.

Wyo. Stat. Ann. § 20-2-308(a)–(b) (LexisNexis 2023). "Section 20-2-308's requirements are mandatory." *Tucker*, ¶ 24, 505 P.3d at 203 (quoting *Lemus v. Martinez*, 2019 WY 52, ¶ 21, 441 P.3d 831, 836 (Wyo. 2019) (*Lemus I*)).

### I.	The district court obtained sufficient financial information to calculate Father's net monthly income.

[¶15]  Mother asserts the district court abused its discretion by calculating child support without first obtaining sufficient financial information from Father. She argues the court performed its calculations without obtaining Father's relevant business records, such as a Schedule K-1[3] reflecting distributions Father received from his chiropractic business in Rock Springs, information on the income Father received from his Evanston office, and information on the rental income Father received from his separate LLC. She also contends Father's tax returns do not provide details regarding the income he received from any of his businesses.

[¶16]  After closely reviewing the record, we conclude the tax documents attached to Father's 2022 financial affidavit contradict Mother's arguments. Father's 2020 tax return indicated wages and salaries were $358,657, with an additional income of $230,455, plus $302 as taxable interest, for a total income of $589,414. Schedule 1 indicated the additional income was based on Father receiving $105,818 as business income, $106,691 of income from "rental real estate, royalties, partnerships, S corporations, etc.," and $17,946 as other income. Father's 2020 Schedule C reporting profits and losses for Davidson Chiropractic Clinic further described Father's additional income. It indicated a gross income of $332,440 and total expenses at $226,622 for a net profit of $105,818. The form also identified the business expenses. Then, Schedule E identified Father's distribution of $99,680 from Davidson Chiropractic Clinic, $6,142 from rental real estate through DOC, LLC, and $869 from other rents, for a total of $106,691.

---

[3] "According to the IRS website, S corporations, partnerships, etc. use Schedule K-1 to report a shareholder's or partner's share of income from the entity." *Lemus, I*, ¶ 8 n.3, 441 P.3d at 833 n.3 (citing I.R.S., *About Schedule K-1*, https://www.irs.gov/site-index-search?search=Schedule+K-1 & field_pup_historical_1=1 & field_pup_historical=1).

[¶17] The information in Father's 2021 tax return was similar. It indicated total wages and salaries of $223,559 with an additional income of $191,017, and taxable interest at $877, for a total income of $415,453. The additional income was based on Father receiving $45,465 as business income, $134,531 of income from rental real estate, royalties, partnerships, and S corporation, and $11,021 for income received from other sources, including Davidson Chiropractic in Evanston. Father's 2021 Schedule C reporting profits and losses for Davidson Chiropractic Clinic further described Father's additional income. It indicated a gross income of $348,575 and total expenses at $303,110 for a net profit of $45,465. The form also provided a list of other business expenses. Further, the form indicated Father received a distribution of $127,315 from Davidson Chiropractic Clinic, $6,781 from rental real estate through DOC, LLC, and $435 from other rents.

[¶18] Father's testimony provided further clarification. He testified to being the owner of Davidson Chiropractic Clinic in Rock Springs. He stated he made approximately $150,000 per year from that business as a salary. He testified his K-1 reported additional income of about $99,000 from the Rock Springs office after expenses. Father explained the $589,414 reflected in his 2020 tax return is the gross of his business and personal income. Father discussed his business expenses, which included property tax, payroll tax, malpractice insurance, travel costs, and general expenses. Father also testified that he owned the Rock Springs office building with two others as DOC, LLC and his chiropractic business pays the rent. He stated DOC, LLC runs at a loss and does not make money. Father also testified that he opened an office in Evanston in 2018, which incurred similar expenses as the Rock Springs office, and that he does not take a wage from this business. He stated any profit from the Evanston office pays other expenses. He further stated he paid approximately $111,000 in taxes and received a $20,000 tax refund in 2021.

[¶19] Father's tax returns from 2020 and 2021, along with his testimony, reflected the income he received from his businesses along with his personal income. The district court therefore had sufficient financial information to calculate Father's net monthly income. *See* Wyo. Stat. Ann. § 20-2-308(a)–(b). Mother's argument to the contrary is unavailing.

[¶20] Mother relies on *Lemus I* to assert the district court improperly based its child support calculations on insufficient financial information. *Lemus I*, 2019 WY 52, 441 P.3d 831. *Lemus I* is distinguishable. There, the father filed a financial affidavit stating his net monthly income from employment and self-employment but provided almost no supporting documentation. *Id.* ¶¶ 6–7, 441 P.3d at 833. For instance, the father did not provide tax returns, Schedule K-1s, or income and expense reports for his business entities. *Id.* ¶ 8, 441 P.3d at 833. Further, his testimony added little information. *Id.* ¶ 10, 441 P.3d at 834. The court acknowledged in its oral ruling the father's financial affidavit was "totally incomplete and unsatisfactory." *Id.* ¶ 15, 441 P.3d at 835. Yet, it proceeded to make child support calculations without ordering updated financial affidavits or holding another hearing. *Id.* ¶ 25, 441 P.3d at 837. This Court held the district court abused its discretion because there was no factual basis to support the district court's child support

6

calculation. *Id.* ¶ 33, 441 P.3d at 839; *see also Tucker*, ¶ 31, 505 P.3d at 204 (reversing the district court because it modified child support without obtaining sufficient financial information from the father).

[¶21] Mother points to the district court's own words from the child support hearing to argue it calculated child support without a sufficient factual basis, similar to *Lemus I*. The court stated Father's income "is difficult to determine, the Court can't just choose to not make a determination. The Court has to make a determination and do the best that it can with the information before it so that's what I am going to do." Unlike in *Lemus I*, the district court previously found both parties' financial affidavits to be insufficient and ordered them to file updated affidavits. Both parties complied. The court then held a hearing, and Father testified to his businesses' income and expenses and overall financial status. Though the court acknowledged it was difficult to calculate Father's income from the documentation provided, it did not find Father failed to fully disclose his financial status or provide sufficient evidentiary support.

[¶22] Mother also generally challenges the district court's calculation of Father's net monthly income, raising two arguments. First, she argues the court improperly deducted approximately $30,000 based on Father's testimony that his wife earned about $20,000 to $30,000 the previous year. She notes the wife's W-2s are not included in the tax returns attached to Father's affidavit, nor did his wife testify about her income. Though Father did not attach his wife's W-2s to the joint tax returns, he testified on the amount his wife made, and the district court accepted that testimony. Wyo. Stat. Ann. § 20-2-308(a) permits the court to calculate child support based on a party's testimony. *See Tucker*, ¶ 25, 505 P.3d at 203 (explaining the court may rely on trial evidence to obtain sufficient financial information to make a child support determination (citation omitted)). Further, "there is no indication the legislature intended, in any manner, to include 'spousal income' or ['']joint income' in the computation required by the statute to provide the premise for calculating presumptive child support owed by one of the parents." *Fleenor v. Fleenor*, 992 P.2d 1065, 1070 (Wyo. 1999) (quoting *Houston v. Smith*, 882 P.2d 240, 243 (Wyo. 1994)). We therefore conclude the court did not abuse its discretion when it deducted the amount Father testified was wife's gross income to calculate Father's net monthly income.

[¶23] Mother lastly contends the court incorrectly handled Father's tax over-payment. The 2021 tax return indicated Father overpaid $35,789 in 2020 and had been refunded $20,000. The remainder of the overpayment would apply to Father's estimated 2022 tax liability. Mother contends the court should have added the full $35,789 to Father's income calculation, not just $20,000. The district court explained it based its child support calculation on Father's 2020 and 2021 tax information—his most current tax information at the time—which included only the $20,000 refund. We cannot see how the district court abused its broad discretion by considering only the tax refund applied to date, and not speculating as to the net effect the residual refund amount would have on Father's future income. *See Marquis*, ¶ 20, 476 P.3d at 218 (citations omitted).

## II.   *The district court did not abuse its discretion by calculating Mother's net monthly income based on her most recent pay stub.*

[¶24]  Mother does not contest that the district court had sufficient financial information to calculate her net monthly income.  Rather, she argues the court inappropriately inflated her net monthly income.

[¶25]  The district court calculated Mother's net monthly income based on the pay stub she attached to her updated financial affidavit.  The pay stub reflected Mother's year-to-date income from her employment between January 1 and March 26, 2022, an 84-day period (not counting March 26).  It indicated a gross pay of $8,261.59.  The district court deducted all applicable taxes and a bonus payment.  However, as noted above, because Mother was not required to insure the child in her custody, the court did not allow her an insurance deduction.  With these adjustments, the court calculated Mother's net pay over that same period as $7,449.94.  It then divided that amount by the 84 days, multiplied that figure by 365, and divided by 12 to reach a net monthly income of $2,695.93.  The court acknowledged this figure was higher than Mother's 2021 W-2 wage figures indicated, but reasoned Mother's "most recent earnings statements" justified its calculation.

[¶26]  Mother asserts the court's net income calculations should have been lower based on her 2021 W-2 and 2020 tax return.  Yet she cites no legal authority, and we found none, that requires the district court to utilize or average past earnings in the manner Mother suggests.  In fact, our case law suggests the contrary.  *See e.g.*, *Zupan v. Zupan*, 2016 WY 78, ¶ 14, 377 P.3d 770, 775 (Wyo. 2016) (concluding that income averaging is not mandatory in all cases but depends on the circumstances); *see also, e.g.*, *Fleenor*, 992 P.2d at 1070–71 (concluding income averaging for purposes of calculating child support is appropriate "where circumstances require it" (citations omitted)).  Mother does not explain why income averaging would be more appropriate under these circumstances.

[¶27]  Mother does not contest the court's calculations using only her 2022 pay stub.  Because the court provided a reasoned explanation for its calculation and had sufficient updated financial information, it did not abuse its discretion in calculating Mother's net monthly income.  *Zupan*, ¶ 14, 377 P.3d at 775.

[¶28]  Affirmed.