# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 21

### OCTOBER TERM, A.D. 2024

### February 18, 2025

RYAN AMADIO,

Appellant
(Defendant),

v.

S-24-0207

TARA AMADIO,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Joshua C. Eames, Judge*

*Representing Appellant:*

Zenith S. Ward and Andrew Sickenberger, Buchhammer & Ward, P.C., Cheyenne, Wyoming.

*Representing Appellee:*

Abigail E. Fournier and Matthew R. Misslin, Steiner, Fournier, Zook & Case, LLC, Cheyenne, Wyoming.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Chief Justice.**

[¶1]   The district court granted Ryan Amadio (Father) and Tara Amadio (Mother) a divorce. It determined custody of the parties' two minor children (the twins), ordered Father to pay child support, and divided the parties' property. On appeal, Father contests various aspects of each of these decisions. We affirm.

## ISSUES

[¶2]   We restate the issues as follows:

1. Did the district court abuse its discretion by ordering a holiday visitation schedule for the twins that differed from the holiday schedule for Father's children from his previous marriage?

2. Did the district court abuse its discretion by ordering that Mother have final decision-making authority regarding the twins?

3. Did the district court abuse its discretion in its determination of Mother's income for purposes of calculating child support?

4. Was the district court's calculation and division of the equity in the parties' home an abuse of discretion?

## FACTS

[¶3]   Mother and Father married in December of 2021 and separated a year later. Two children were born of the marriage, twins EA and RA. Father also has three children from a previous marriage. Shortly after the parties separated, Mother filed for divorce. The matter went to trial on the issues of custody, child support, and property division. Neither party made a request for written findings of fact under W.R.C.P. 52(a)(1)(A) (2023).

## I.   Child custody

[¶4]   Mother sought primary physical custody of the twins, with Father to have visitation on alternating weekends. Father sought to continue the parties' schedule prior to trial, where the parties had the twins on alternating weeks such that Father's schedule was synchronized with the schedule he followed for the twins' half-siblings. Both parties agreed that the custody schedule for holidays should synchronize with Father's schedule for the twins' half-siblings.

1

[¶5]   The district court noted that "neither party presented much evidence at trial that was particularly helpful to the [c]ourt's consideration of the [best interest] factors [found in Wyo. Stat. Ann. § 20-2-201 (2023)]." Despite this assessment of the evidence and the lack of a request for written findings, the district court "endeavored to explain those facts and factors that were dispositive" to its decision. In doing so, the district court found many of the best interest factors to be neutral, finding each party's criticism of the other to be unpersuasive. Overall, the court favored Father's proposed custody arrangement, noting that Mother's proposal would drastically reduce Father's time with the twins, impacting his relationship with them. The district court also expressed concern regarding some of Father's actions, including his close scrutiny of Mother's activities in her free time, his unsubstantiated claims that Mother spent excessive amounts of money on alcohol, and his "take it or leave it" attitude when insisting that the parties adhere to an alternating-week custody schedule prior to trial.

[¶6]   Despite these concerns, the district court ordered that the parties maintain their established alternating-week schedule. The court gave particular weight to the twins' stability and noted that Mother had not presented persuasive evidence that equal parenting time was not in the twins' best interests. The district court ordered that Mother have final decision-making authority in the event that the parties disagree on major decisions for the twins.  As for the holiday schedule, the district court ordered a schedule that differed somewhat from Father's schedule for the twins' half-siblings. The following table provides a basic illustration of Father's differing holiday schedules:

| Holiday | Half-siblings | Twins |
|---------|---------------|-------|
| Mother's Day | Not addressed | With Mother |
| Father's Day | Not addressed | With Father |
| Summer | Father entitled to two consecutive weeks of visitation | Father entitled to two consecutive weeks of visitation |
| Halloween | With Father from the time school lets out until 6:45 PM in odd-years, and from 6:45 PM to 9:15 PM in even years | Not addressed |
| Thanksgiving | With Father for the entire school break in even-numbered years | With Father for Thanksgiving Day only in odd-numbered years |
| Christmas | With Father for the first half of school break in odd-numbered years and the second half of school break in even-numbered years | With Father for Christmas Day only in even-numbered years |
| Spring Break | With Father for the entire break in odd-numbered years | With Father for the second half of break each year |

## II.   Child support

[¶7]   Each party submitted a confidential financial affidavit (CFA) pursuant to Wyo. Stat. Ann. § 20-2-308 (2023). The district court determined that Father's net monthly income was $6,727.77. As for Mother, the district court generally accepted the income stated in her CFA, arriving at a net monthly income of $2,580.49.[1] In calculating her net monthly income, Mother relied on her tax returns, which included income from her employment as a freight manager for the Buckle, as well as income from the salon she owns and operates. Her tax returns also included $7,350 of income for the year from booths she rented at her salon, and that income was not included in her CFA or the district court's final determination of her income.

[¶8]   Based on these figures, the district court ordered Father to pay a presumptive child support obligation of $759.05 per month. Further, the district court ordered that Father pay retroactive child support in the total amount of $13,220.20 to account for unpaid child support during the period between Mother's divorce filing and trial.

## III.   Property division

[¶9]   Though the district court divided various assets and debts between the parties, the most substantial asset (and the only one at issue on appeal) was the parties' home. Mother's parents initially purchased the home for $375,000 in October of 2021, and then sold it to the parties for the same price in May of 2022.

[¶10]   A certified residential appraiser testified that the market value of the home on October 10, 2023 was $457,000. She further testified that she believed the value was still appropriate at the time of trial in March of 2024 due to the limited sales that had occurred in the area since her appraisal. The appraiser agreed that the value in her appraisal did not reflect the value at the time of the parties' separation in December of 2022. Father presented a debt and asset summary to the court showing that the mortgage obligation on the home at the time of the parties' separation was $364,705.54.[2]

[¶11]   Father requested that the district court value the home at $370,153, while Mother requested that the district court use the appraiser's value of $457,000. The district court noted that the appraiser's value of $457,000 was the only evidence of the home's value presented at trial and rejected Father's figure of $370,153 "because no evidence was

---

[1] The district court added $1,000 to the net income Mother claimed in her CFA to account for the fact that she lived in her parents' rental property and did not pay rent.

[2] The district court noted that it was "unclear from [Father's] summary whether [$364,705.54 was] the current mortgage or whether this figure would be the mortgage in December 2022, at the time of separation." However, based on Father's request to value the home at the time of separation, the district court concluded that the figure reflected the mortgage obligation at the time of separation.

presented at trial to support his valuation." The court subtracted the mortgage obligation of $364,705.54 from the $457,000 value of the home to conclude that the parties had accumulated $92,294.46 worth of equity in the home. It then awarded each party half of this amount and ordered that Father either refinance the home or list it for sale within 90 days, and in either case pay Mother the lump sum of $46,147.23, her half of the equity.

## *STANDARD OF REVIEW*

[¶12] Father appeals the district court's decisions on child custody, child support, and property division.

> We review the district court's custody decision for an abuse of discretion. *Bailey v. Bailey*, 2024 WY 65, ¶ 6, 550 P.3d 537, 542 (Wyo. 2024) (citations omitted). "A court abuses its discretion if it acts in a manner that exceeds the bounds of reason under the circumstances, violates some legal principle, or ignores a material factor deserving significant weight." *Id.* (citing *Hyatt v. Hyatt*, 2023 WY 129, ¶ 48, 540 P.3d 873, 888 (Wyo. 2023)). We consider the evidence presented "in the light most favorable to the district court's decision, 'affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.'" *Ianelli v. Camino*, 2019 WY 67, ¶ 20, 444 P.3d 61, 66 (Wyo. 2019) (quoting *Bishop v. Bishop*, 2017 WY 130, ¶ 9, 404 P.3d 1170, 1173 (Wyo. 2017)). We do not reweigh the evidence. *Id.* (citation omitted).

*Vassilopoulos v. Vassilopoulos*, 2024 WY 87, ¶ 7, 557 P.3d 725, 728-29 (Wyo. 2024).

[¶13] Likewise,

> We review the district court's child support determinations for an abuse of discretion. *Martin v. Hart*, 2018 WY 123, ¶ 28, 429 P.3d 56, 65 (Wyo. 2018) (citation omitted). "Child support calculations are governed exclusively by statute." *Hyatt*, 2023 WY 129, ¶ 37, 540 P.3d at 886 (citation omitted). To calculate child support, the court must first determine the parties' net monthly incomes. Wyo. Stat. Ann. § 20-2-304(a); *see also* Wyo. Stat. Ann. § 20-2-303(a) (defining "income"). The court then must apply the appropriate statutory formula and set forth the presumptive child support amount in its order. *See* Wyo. Stat. Ann. §§ 20-2-304(a), -307(a).

4

*Id.*, ¶ 14, 557 P.3d at 730.

[¶14]  We also review property division for an abuse of discretion. *Bloedow v. Maes-Bloedow*, 2024 WY 115, ¶ 11, 558 P.3d 576, 581 (Wyo. 2024) (citing *Hyatt v. Hyatt*, 2023 WY 129, ¶ 11, 540 P.3d 873, 880 (Wyo. 2023)). "To determine whether the district court abused its discretion, 'we consider the reasonableness of its decision.'" *Bloedow*, 2024 WY 115, ¶ 11, 558 P.3d at 582 (quoting *Golden v. Guion*, 2016 WY 54, ¶ 18, 375 P.3d 719, 724 (Wyo. 2016)). The ultimate question is whether the district court could reasonably decide as it did, and we consider only the evidence in favor of the successful party, giving that party every reasonable inference that can be drawn from the record while ignoring the evidence of the unsuccessful party. *Bloedow*, 2024 WY 115, ¶ 11, 558 P.3d at 582.

[¶15]  Finally, our review is framed by the parties' lack of a request for written findings under W.R.C.P. 52(a)(1)(A).

> When no such request is made, "it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant." W.R.C.P. 52(a)(1). In the absence of special findings of fact, this Court must consider that the trial court's judgment carries with it every finding of fact to support that judgment. *Barney v. Barney*, 705 P.2d 342, 345 (Wyo. 1985); *see also, Bishop v. Bishop*, 944 P.2d 425, 428 (Wyo. 1997) ("the parties must request special findings of fact if they are desired, and in the absence of a special finding, a general finding by the trial court carries with it every finding of fact supported by the record") (citing *Deroche v. R.L. Manning Co.*, 737 P.2d 332, 335 (Wyo. 1987)).

*Morrison v. Hinson-Morrison*, 2024 WY 96, ¶ 20, 555 P.3d 944, 953 (Wyo. 2024).

### DISCUSSION

I.  ***The district court did not abuse its discretion by ordering a holiday visitation schedule that was not identical to Father's holiday visitation schedule with the twins' half-siblings.***

[¶16]  Though both parties requested that the twins' holiday visitation with Father take place at the same time as their half-siblings' holiday visitation with him, the district court's holiday schedule differed in several respects from Father's schedule with the twins' half-siblings. The district court did not make any specific findings as to why it ordered a different schedule. Father emphasizes our prior holdings that sibling separation

must be considered in determining children's best interests in custody matters. He contends that because both parties agreed to a schedule identical to his previous holiday schedule, and because the only evidence presented at trial favored such a schedule, the district court's decision exceeded the bounds of reason.

[¶17] Though the visitation schedule differs from the parties' stipulation to synchronize the schedules, we cannot say that it separates the siblings to such an extent that it is an abuse of discretion. The only holiday where the schedules are guaranteed to be opposite is Thanksgiving, and even then the week on/week off nature of the twins' schedule may result in them spending all of Thanksgiving break with their half-siblings, save for Thanksgiving day itself. Because the half-siblings' Christmas visitation is dependent on the school calendar, Father may or may not have both sets of children on Christmas day, depending on which half of the break the holiday happens to fall in for a given year. Further, the twins will spend some of each spring break with their Father, and thus will see their half-siblings for at least some of spring break in the years the half-siblings are with Father. Looking beyond the holiday schedule and viewing the district court's custody decision as a whole, the twins are with their Father at the same time as their half-siblings for every week not affected by the holiday schedule.

[¶18] Though the district court did not explain why it deviated from the parties' agreed holiday visitation schedule, it provided a substantial discussion of the twins' best interests as they related to the court's overall custody decision. Recognizing the district court's broad discretion in this area, as well as the lack of a request for written findings from either party, we cannot conclude that a custody schedule that synchronizes the twins with their half-siblings for the vast majority of the year is an abuse of discretion. The district court "place[d] on the record the facts crucial to [its] child custody decision[]," *Castellow v. Pettengill*, 2021 WY 88, ¶ 10, 492 P.3d 894, 898 (Wyo. 2021) (quoting *Kimzey v. Kimzey*, 2020 WY 52, ¶ 38 n.2, 461 P.3d 1229, 1241 n.2 (Wyo. 2020)), and though the schedule was not exactly as the parties agreed, it was not outside the bounds of reason.

## II. The district court did not abuse its discretion by ordering that Mother have final decision-making authority regarding the twins.

[¶19] Father next argues that the district court abused its discretion by ordering that Mother have final decision-making authority for the twins. He argues that the district court improperly relied on only two of the ten best interest factors listed in Wyo. Stat. Ann. § 20-2-201(a). He also challenges the substance of the district court's considerations and conclusions on many of the factors.

### A. The district court adequately explained the facts crucial to its order that Mother have final decision-making authority regarding the twins.

6

[¶20]  Father takes issue with the fact that in ordering that Mother have final decision-making authority regarding the twins, "the district court relied on only two of the possible ten applicable best interest factors[.]" Though no party requested written findings under W.R.C.P. 52(a)(1)(A), we "'encourage district courts to place on the record the facts crucial to their child custody decisions' regardless of the lack of a mandatory requirement or a Rule 52(a)(1)(A) request." *Kimzey*, 2020 WY 52, ¶ 38 n.2, 461 P.3d at 1241 n.2 (Wyo. 2020) (quoting *Ianelli v. Camino*, 2019 WY 67, ¶ 41, 444 P.3d 61, 71 (Wyo. 2019) (Kautz, J., specially concurring)). "Nevertheless, unless requested, district courts are not required to make specific findings for each statutory factor if consideration is reflected in the proceeding transcripts, by opinion letter, or as findings in the written order." *In re Paternity of JWH*, 2011 WY 66, ¶ 10, 252 P.3d 942, 947 (Wyo. 2011) (internal quotation marks omitted) (quoting *Pahl v. Pahl*, 2004 WY 40, ¶ 12, 87 P.3d 1250, 1254 (Wyo. 2004)).

[¶21]  Despite the absence of a request for written findings from either party, the district court "endeavored to explain those facts and factors that were dispositive" to its decision. Specifically, the court found: 1) neither parent had a better relationship with the twins than the other; 2) neither parent demonstrated an inability to care for the twins; 3) neither parent was more competent than the other despite each of their statements to the contrary; 4) Father's alternating-week proposal would better foster a relationship between the twins and each parent; 5) at times, Father too closely scrutinized Mother's personal life, including her attendance at a community dance and her spending on alcohol, which Father appeared to have exaggerated; 6) Father's alternating-week proposal furthered stability for the twins; and 7) though Father's proposed schedule was in the twins' best interests, the ultimatum he gave Mother in initially demanding this schedule was concerning.

[¶22] Though Father takes issue with the district court's emphasis on the fifth and seventh of these findings to order that Mother have final decision-making authority, the district court adequately explained why many of the factors were neutral. Further, these two findings directly implicated Father's ability to effectively co-parent with Mother. *See Sears v. Sears*, 2021 WY 20, ¶ 14, 479 P.3d 767, 772 (Wyo. 2021) (noting that circumstances of the case may call for greater emphasis on certain factors). Even though the district court addressed some factors by simply stating they were neutral without discussion, it was not required to make specific findings on each factor,[3] and thoroughly

---

[3] Father relies heavily on *Domenico v. Daniel*, 2024 WY 2, 541 P.3d 420 (Wyo. 2024) to assert that the district court's findings were insufficiently detailed. This misses the mark for two reasons. First, the findings we found inadequate in *Domenico* lacked reference to the record or were unsupported in the record. *Id.*, ¶¶ 41-44, 541 P.3d at 434. Here, the district court directly referenced the parties' testimony and exhibits in its two findings expressing concern about Father's interactions with Mother. Second, in *Domenico*, there was a request for written findings under W.R.C.P. 52(a)(1)(A), and the deficient findings were specifically inadequate under that rule. *Id.*, ¶¶ 23, 41, 541 P.3d at 428, 434. Here, no such request

explained the facts most crucial to its decision. *JWH*, 2011 WY 66, ¶ 10, 252 P.3d at 947; *Kimzey*, 2020 WY 52, ¶ 38 n.2, 461 P.3d at 1241 n.2; W.R.C.P. 52(a)(1).

## B. We do not reweigh the evidence presented by the parties regarding child custody.

[¶23] Father challenges not only the level of detail in the district court's explanation, but also its substantive considerations and conclusions as to some of the best interest factors. He contends that it was improper for the district court to use his concerns regarding Mother's drinking habits or his custody demands against him. Father interprets this as the district court punishing him for not having sufficiently persuasive evidence regarding Mother's spending on alcohol, as well as for insisting on a schedule that was substantively in the twins' best interest. He also contends that the district court erred in not crediting his evidence to find that certain factors favored him.

[¶24] Father essentially asks us to reweigh the evidence and negate each factor on which the district court found against him while overriding the district court's determination that other factors were neutral. Our standard of review precludes this. *Vassilopoulos*, 2024 WY 87, ¶ 7, 557 P.3d at 729 ("We do not reweigh the evidence."). Though Father may have intended his evidence of Mother's spending habits and the success of the twins' existing schedule to weigh solely in his favor, the district court exercised its discretion to weigh the evidence otherwise. *See id.*

## III. The district court did not abuse its discretion in determining Mother's income for purposes of calculating a presumptive child support obligation.

[¶25] Father next challenges two aspects of the district court's calculation of Mother's income for child support purposes. First, he contends that the district court improperly accepted certain deductions from Mother's income based on her CFA. Second, he argues that the district court erred by failing to include money Mother makes from renting booths at her salon in her final net income.

## A. The district court did not abuse its discretion by accepting Mother's income deductions.

[¶26] Father contends that Mother's deductions from her income contained in her CFA were improper because they were supported only by her tax returns. He argues that because she was self-employed, her deductions were only allowable if she supported

_____

was made. *Domenico* also stands for the proposition that one parent should have final decision-making authority so that important decisions can still be reached when parents are at an impasse. *See id.*, ¶ 60, 541 P.3d at 436.

them with receipts and expenses. He also argues that differences in the Internal Revenue Code and Wyoming's child support legislation make reliance on tax returns an improper basis for deducting income for child support purposes.

### 1. Mother's CFA was supported by adequate documentation.

[¶27] Mother supported the income claimed in her CFA using pay stubs from her employment at the Buckle, her 2023 tax return, and her W-2s. Her tax return reflected a detailed overview of her earnings from her jobs and the expenses incurred by her salon business.

[¶28] The requirements for supporting income claimed in a CFA are provided by statute:

> Financial affidavits of the parties shall be supported with documentation of both current and past earnings. Suitable documentation of current earnings includes but is not limited to pay stubs, employer statements, or receipts and expenses if self-employed. Documentation of current earnings shall be supplemented with copies of the most recent tax return to provide verification of earnings over a longer period.

Wyo. Stat. Ann. § 20-2-308(b). Father focuses on the words "or receipts and expenses if self-employed," apparently interpreting this as a per se requirement for self-employed parties to a child support action to include receipts and expenses with their CFAs. His argument is directly contradicted by the modifying phrase, "includes but is not limited to," as well as our caselaw.

[¶29] In *Corbitt v. Davidson*, the appellant argued that the father's documentation of his income was insufficient, and that the district court abused its discretion by calculating child support without sufficient financial information. 2023 WY 69, ¶ 15, 532 P.3d 660, 664 (Wyo. 2023). We rejected her argument, noting that the Schedule C attached to the father's tax return reported the profits and losses for his business, while Schedule E indicated his distributions from the business. *Id.*, ¶ 16, 532 P.3d at 664. We also found that the father's testimony further clarified his income, and the evidence as a whole provided the district court with a sufficient evidentiary basis to calculate his income for child support purposes. *Id.*, ¶¶ 18-19, 532 P.3d at 665. Here, Mother's tax returns are similar. Her Schedule C lists $29,019 in gross receipts and $23,573 in expenses for her salon business. Her schedule E lists her income from booth rentals. She also testified at trial, albeit in a general manner, as to the nature of her business expenses, and that testimony was consistent with the expenses listed in her Schedule C. Based on the information contained in her tax returns and her testimony, the district court had sufficient evidence to calculate Mother's income.

2. **Regardless of any differences between federal tax legislation and Wyoming child support legislation, any reasonable unreimbursed legitimate business expenses may be deducted from income.**

[¶30]  Father specifically contests the substance of Mother's deductions, claiming that differences between the federal income tax scheme and Wyoming's child support legislation make deductions based on tax documents improper for child support purposes. Wyo. Stat. Ann. § 20-2-303(a)(ii) (2023) provides:

> "Income" means any form of payment or return in money or in kind to an individual, regardless of source. Income includes, but is not limited to wages, earnings, salary, commission, compensation as an independent contractor, temporary total disability, permanent partial disability and permanent total disability worker's compensation payments, unemployment compensation, disability, annuity and retirement benefits, and any other payments made by any payor, but shall not include any earnings derived from overtime work unless the court, after considering all overtime earnings derived in the preceding twenty-four (24) month period, determines the overtime earnings can reasonably be expected to continue on a consistent basis. ***In determining income, all reasonable unreimbursed legitimate business expenses shall be deducted.***

(emphasis added).

[¶31]  Father relies on our decision in *Houston v. Smith*, 882 P.2d 240 (Wyo. 1994) for the proposition that "[t]here are fundamental differences in the Wyoming statutory scheme and the federal income tax scheme, which foreclose any reliance upon the figures derived for taxable income on a federal income tax return in order to compute 'net income' for purposes of the Wyoming statute." We have previously addressed and rejected a nearly identical argument:

> [I]n neither *Houston* nor *Watson* [*v. Watson*, 2002 WY 180, 60 P.3d 124 (Wyo. 2002)], however, did we state a per se prohibition . . . on the use of federal tax information as evidence in determining "income" and "net income" under the Wyoming child support statutes. In fact, in all child support proceedings, the parties are required to submit to the court financial affidavits with supporting documentation that includes copies of their most recent tax returns.

*Ackerman v. Ott*, 2014 WY 93, ¶ 12, 330 P.3d 271, 274 (Wyo. 2014) (quoting *Ready v. Ready*, 2003 WY 121, ¶ 16, 76 P.3d 836, 840 (Wyo. 2003)). Thus, the focus is not on the source of the information, but instead "upon the reasonable and legitimate nature of the expense and its impact on the party's actual cash flow in the year in question rather than the treatment of the expense by federal law in the context of income taxes." *Ackerman*, 2014 WY 93, ¶ 12, 330 P.3d at 274 (quoting *Watson*, 2002 WY 180, ¶ 16, 60 P.3d at 128).

[¶32] With no per se prohibition on relying on tax returns, the district court had to determine only that Mother's expense deductions were reasonable, legitimate, and of direct consequence to her finances in a given year. *See Ackerman*, 2014 WY 93, ¶ 12, 330 P.3d at 274. The expenses listed on Mother's Schedule C are for car and truck expenses, legal and professional expenses, office expenses, supplies, taxes and licenses, other expenses, and "Other business property."[4] While her testimony did not include dollar amounts, Mother testified as to the nature of her business expenses, and her testimony generally corresponded with the categories of expenses listed in her Schedule C. Each category of expenses are of a nature that would directly affect the salon's earnings for the year. Father did not specifically contest any of her claimed expenses and instead presented the court with a voluminous exhibit reflecting his own calculation of Mother's income using her bank statements, which did not include any explanation of how he arrived at his calculations. The district court was faced with an enormous amount of conflicting information as to Mother's income, and we cannot say that its rejection of Father's calculation and acceptance of Mother's was an abuse of discretion.

**B.      Father did not raise the issue of Mother's booth rental income below and does not offer a plain error analysis on appeal.**

[¶33] Mother's CFA calculated her net income based on her income from her employment at The Buckle and the income generated from the operation of her salon. It did not include the $7,350 ($612.50 per month) that she generated from booth rentals at her salon. Father asserts that this omission is erroneous and that her rental money clearly falls within the definition of "income" in Wyo. Stat. Ann. § 20-2-303(a)(ii). Father, however, did not specifically contest Mother's exclusion of this amount in her CFA before the district court. Father opted instead to perform an entirely original calculation of Mother's income and proposed that the district court use that amount to determine child support.

---

[4] Father particularly takes issue with Mother's claimed expense of "Other business property," claiming it is too vague to determine what business property was purchased. However, this is listed on Schedule C as a sub-category of "Rent or lease," and based on Mother's trial testimony, this could reasonably be attributed to the rental cost for Mother's salon's place of business.

[¶34] Father's exhibit, though introduced to contest Mother's calculation of her own income, did not specifically put the district court on notice of Mother's failure to include the booth rental money in her income. "It is not appropriate for this Court to reverse a district court ruling on grounds that were never presented to it." *Traylor v. Kraft*, 2024 WY 74, ¶ 68, 552 P.3d 351, 364 (Wyo. 2024) (internal quotation marks omitted) (quoting *TEP Rocky Mountain LLC v. Record TJ Ranch Ltd. P'ship*, 2022 WY 105, ¶ 63, 516 P.3d 459, 478 (Wyo. 2022)). This is especially true in cases where we review for an abuse of discretion, as our analysis necessarily implicates the arguments and evidence presented to the district court. *Traylor*, 2024 WY 74, ¶ 68, 552 P.3d at 364. Further, an issue cannot be raised by a broad, sweeping objection and must be "called to the attention of the trial court in a clear manner." *Parker v. Cook*, 2022 WY 3, ¶ 9, 501 P.3d 1253, 1256 (Wyo. 2022) (quoting *State ex rel. Dep't of Family Servs. v. Kisling*, 2013 WY 91, ¶ 16, 305 P.3d 1157, 1163 (Wyo. 2013)). Father's rejection of Mother's income calculation in its entirety was not enough to clearly call Mother's alleged omission to the attention of the district court.

[¶35] Normally, when an issue is not raised below, we review for plain error. *Dobbins v. State*, 2024 WY 108, ¶ 13, 557 P.3d 306, 310 (Wyo. 2024). "However, where an appellant does not offer a plain error analysis, we have declined to review for plain error." *Id.* Father failed to include such an analysis in his brief, and we decline to conduct such a review sua sponte.

## IV.    *The district court did not abuse its discretion in dividing the equity in the parties' home.*

[¶36] Father argues that the district court abused its discretion in calculating and dividing the equity in the marital home. He first argues that the district court's method of calculating the equity in the home was internally inconsistent due to its use of a market value from October 2023 and a mortgage obligation from December 2022. He next contends that the district court failed to address the statutory factors for property distribution in Wyo. Stat. Ann. § 20-2-114(a) (2023), and that the factors would have favored a different property distribution if properly considered. Finally, he contends that these alleged errors constitute cumulative error, requiring reversal by this Court.

### A.    The district court's calculation of the equity was reasonable in light of the evidence presented.

[¶37] Father argues that the district court improperly calculated the equity in the parties' home by using the appraiser's October 2023 valuation of the home while using the mortgage obligation at the time of the parties' separation. We disagree.

[¶38] As the district court noted, "[t]he only evidence presented at trial established that the fair market value of the marital home as of October 10, 2023 was $457,000." Father

12

concedes that this was the only figure presented at trial but notes that the full appraisal introduced by Mother as an exhibit reflects two purchases of the home for $375,000, one in October of 2021 by Mother's parents and the other in May of 2022 by the parties. He contends that because the May 2022 date of sale is closer to the December 2022 date of separation that the district court used to determine the mortgage obligation, it was more reasonable to value the home using the May 2022 sale price of $375,000 than it was to use the October 2023 appraisal.

[¶39] Father's argument overlooks both the minimal evidence presented to the district court and our standard of review. We do not decide what the district court's most reasonable course of action might have been, but only ask whether the district court could reasonably decide as it did. *Bloedow*, 2024 WY 115, ¶ 11, 558 P.3d at 582. Viewed through that lens, the district court's decision was clearly reasonable. Father presented no evidence of the home's value at trial, and ultimately argued that the district court should accept a $370,153 value that had no evidentiary basis. He now argues on appeal that the district court should have imposed a different value of $375,000 that was not advocated by either party below. There was sufficient reason for the district court to accept the $457,000 instead of the earlier sale prices. Father himself testified that the home was undervalued at the time Mother's parents purchased it in October of 2021, and as Mother points out, her parents' sale approximately seven months later for the same price may be "more indicative of the donative intent of Mother's parents . . . than the true value of the home."

[¶40] The district court was presented with little evidence regarding the value of the home and the remaining obligation on the mortgage. Though it used a valuation date that was different from the mortgage date, it was entirely reasonable to do so under the circumstances, and that is all that was required. *Bloedow*, 2024 WY 115, ¶ 11, 558 P.3d at 582; *see also Jones v. Young*, 2024 WY 64, ¶ 20, 550 P.3d 91, 95 (Wyo. 2024) (Kautz, J., dissenting) ("A trial court is not at liberty to refuse to decide the issues on the evidence presented by the parties, and instead insist on some other evidence.").

## B.    The district court was not required to make written findings, and this Court does not reweigh the evidence on appeal.

[¶41] Father also takes issue with the district court's failure to frame its property division in terms of the factors set out in Wyo. Stat. Ann. § 20-2-114 (2023).[5] He argues

---

[5] § 20-2-114(a) provides:

> In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired

that while the district court recited these factors in its order, it did not specifically address them in explaining why it divided the equity in the home as it did. He claims that a proper consideration of these factors does not support the property division ultimately made by the district court.

[¶42] If Father wished for the district court to make specific findings on the statutory property distribution factors, he was required to make a Rule 52(a)(1)(A) request for written findings. *See Morrison*, 2024 WY 96, ¶ 20, 555 P.3d at 953. And by suggesting that the factors actually favor him, "[Father] asks us to do what our standard of review precludes—'to reweigh the evidence and give all favorable inferences to the evidence supporting [Father's] position.'" *Morrison v. Rubio*, 2022 WY 26, ¶ 23, 504 P.3d 251, 256 (Wyo. 2022) (quoting *Campbell v. Hein*, 2013 WY 131, ¶ 14, 311 P.3d 165, 168 (Wyo. 2013)). Giving all favorable inferences to Mother as the successful party, the district court clearly did not abuse its discretion. *Bloedow*, 2024 WY 115, ¶ 11, 558 P.3d at 582. Although Father was left with the substantial obligation of the mortgage, he was awarded half of the pre-separation equity in the home, all the post-separation equity accrued up until the time of trial, and the opportunity to accumulate more equity in the future or realize his share of the equity by selling the home.[6]

## *CONCLUSION*

[¶43] Though it differed from the holiday schedule Father follows for the twins' half-siblings and the request of both of the parties, the district court did not abuse its discretion in setting a holiday visitation schedule for the twins. The district court also did not abuse its discretion in ordering that Mother have final decision-making authority for the twins, and we decline to reweigh the evidence on that matter as requested by Father. The district court's calculation of Mother's income for child support purposes was based on sufficient evidence of her income and was not adequately contested by Father in many of the respects he seeks to raise on appeal. Finally, the district court did not abuse its discretion in calculating and dividing the equity in the parties' home, particularly given the limited evidence presented by the parties. We affirm the district court's order in all respects.

---

and the burdens imposed upon the property for the benefit of either party and children.

[6] Father's cumulative error argument is premised on his belief that the district court's valuation of the equity and overall assessment of property division were erroneous. Because the district court did not err in either regard, it did not commit cumulative error. *See Whitmore v. State*, 2024 WY 81, ¶ 31, 552 P.3d 828, 834 (Wyo. 2024) ("Because [appellant] has failed to establish any error, we do not consider his cumulative error argument.").